WESTERN UNION TELEGRAPH CO. V. DANIEL RICH.

1. CASE-MADE; *"Skeleton Case."* In determining the validity of a skeleton "case-made," the same general rules apply as in case of a skeleton bill of exceptions.

2. RIGHT-OF-WAY OF RAILROAD; *Use for Telegraph Line.* A railroad company may for its own use in operating its road, construct a telegraph line over and along its right-of-way, and in so doing cut down, if necessary, trees standing upon its right-of-way, without subjecting itself to any additional claim of the original land-owner for compensation.

3. ——— *Damages; Additional Burden.* If such line of telegraph is built by the railroad company and another party at their joint expense,

and for their joint use, the latter is only responsible to the land-owner for the damages caused by the additional burden, if any there be, cast upon the easement by its use of the telegraph line.

### *Error from Lyon District Court.*

TRESPASS, brought by *Rich.* Trial at the September Term 1875 of the district court. Verdict and judgment for plaintiff, and the *Telegraph Company,* defendant, brings the case here. All necessary facts appear in the subjoined opinion.

*Ross Burns,* and *J. G. Waters,* for plaintiff in error.

*Randolph & Sedgwick,* for defendant in error.

The opinion of the court was delivered by

BREWER, J.: Rich sued the telegraph company in the Lyon county district court to recover $435, treble the value of trees and vines belonging to Rich, and on his land, and alleged to have been cut down and destroyed by the agents and employés of the telegraph company. There was a trial by jury, and a verdict returned of $270, which judgment the telegraph company asks to be reviewed. Rich has filed a motion to strike out portions of the case-made filed in this court, for the reason that in the original case-made, as signed by the judge, the clerk is instructed to insert the documents referred to, instead of setting them out at length. In other words, it is claimed that only a skeleton case-made was ever signed and settled by the trial judge. We think the same general rules apply to a skeleton case-made as to a skeleton bill of exceptions, though doubtful matters would be resolved more readily in favor of the validity of a case-made than of a bill of exceptions, for the former can only be signed after it had been submitted to and examined by the opposite party, while the latter may be allowed and signed in the absence and without the knowledge of the opponent. Hence there is a sort of assent on both sides to the preparation of the case-made in such a form, and to the after-insertion by the clerk of the documents referred

1. Skeleton case-made.

to. For the rules applicable to these skeleton records, see the opinion in the case of *A. & N. Rld. Co. v. Wagner*, recently decided, (*ante*, p. 335.)

In the case-made before us some documents were so identified as to leave no room for doubt, and were properly transcribed in the copy of the case-made. The petition, for example, the other pleadings, the verdict, the motion for a new trial, all of which were identified not merely by their names, but by the dates of their filing. On the other hand, there were some matters not so identified. Thus, the charge of the court appears in the record before us, but the original case-made does not contain it, but says simply "Here copy the court's instructions." Whether these were given orally, or in writing, whence the clerk was to obtain them, whether from the files of the court, his own recollection, the minutes of the judge, or a stenographer's report, the original case-made does not disclose. From nothing now before us can we say that the charge as copied into the record is properly there, or was authenticated by the judge as the one given on the trial.

We need not pursue this inquiry as to each of the matters simply referred to in the original case-made, for we discover an error which compels a reversal independent of them. The testimony was mostly written out in the original case-made. The pleadings were properly incorporated, so that we have before us the issues and the evidence, or at least enough to disclose the pertinency of the ruling we shall consider. It

2. Right-of way of railroad; extent of use by railway company.

appears that the trees were on or close by the right-of-way of the A. T. & S. F. Railroad, and were cut down to make room for some telegraph poles and prevent interference with the telegraph wire. This line of telegraph was, it was claimed by plaintiff, built and owned by the defendant, and the trees cut down by its employés. On the other hand the defendant sought to prove that it was built by the defendant and the railroad company, under an arrangement for its joint use by the two companies. A witness was called, and the defendant offered to prove by

him that the line of telegraph was built jointly by defendant and the railroad company for the use of the railroad company in the moving of its trains, and the transaction of its business, that it was a part of and necessary to its business, and was built upon and over the right-of-way of the railroad company; but the court refused to receive the testimony, and the defendant excepted. In this we think the court erred. A telegraph line, if not indispensable to a railroad, tends so much to facilitate its business, and to the speedy and safe running of its trains, that the railroad company has a right to build it, to use its right-of-way therefor, and to remove all obstructions thereon, to its fullest and most uninterrupted and beneficial use. Although it may have but an easement in the land, and that easement limited to its use for railroad purposes, yet a telegraph is so convenient if not indispensable, that it may cut down every tree and bush on the right-of-way if necessary for the most constant and efficient use of a telegraph line built by it over and upon such right-of-way, just as it may dig away a hill, or fill up a ravine, for the sake of a water tank or a station-house. (*St. Jos. & D. C. Rld. Co. v. Dryden*, 11 Kas. 186.) By so doing it gives the adjacent land-owner no claim for damages. Such use is contemplated in the original condemnation, and the damages resulting therefrom are part of the damages included in the assessment therefor. In short, the railroad company may use its right-of-way not merely for its track, but for any other building or erection which reasonably tends to facilitate its business of transporting freight and passengers, and by such use in no manner transcends the purposes and extent of the easement, or exposes itself to any claim for additional damages to the original land-owner. So that if the railroad company had built this line by itself, and independent of the defendant, and in so doing had only cut down trees upon its right-of-way, it is clear that the plaintiff would have had no cause of action therefor. Does the fact, that it took a partner in the construction and use of the telegraph, expose it or such partner to any liability to

*3. Telegraph line; no burden, no damages.*

the land-owner for the full value of trees cut down upon its right-of-way? We think not. If the railroad company could build by itself without liability, it did not assume liability by building with another. Whatever it could do and would have done for its own use and benefit, and was so done, was, so far as the land-owner is concerned, *damnum abseque injuria,* no matter who bore the expense; or perhaps more correctly, it was damages already paid for. We do not question that every additional burden cast upon the land, outside of the purpose and scope of the original easement, no matter in whose behalf, gives to the land-owner new claim for compensation. But such compensation is limited to the extent of the additional burden. *Hatch v. C. & I. Rld Co.,* 18 Ohio St. 92; *L. M. & C. Rld. Co. v. Dayton,* 23 Ohio St. 510; *State v. Maine,* 27 Conn. 641. Of course, if the trees were not upon the right-of-way, it is immaterial whether the defendant built the line alone or jointly with the railroad company, for in the latter case either would be responsible for the entire damages. We cannot of course pass upon this question of fact, for we cannot tell what the testimony if admitted would have disclosed. It is enough that the testimony offered ought to have been admitted, and then the jury instructed that, if the facts were as defendant sought to prove them to be, the defendant was liable for only the damages caused by the additional burden, if any, its use of the telegraph cast upon the land.

The judgment will be reversed, and the case remanded for a new trial.

All the Justices concurring.