## McDevitt et al. v. People's Nat. Gas Co., Appellant.

[Marked to be reported.]

*Equity—Natural gas company—Damages—Bond—Practice.*

A court of equity has jurisdiction to compel a natural gas company, about laying pipes under a sidewalk, to enter a bond to secure the landowner for the direct injury caused by the disturbed condition of the street, and the consequential injury to the land, as a condition of the dissolution of a preliminary injunction.

*Streets—Servitude—Municipalities—Use of streets—Damages.*

A street in a city is subject to greater servitude in favor of the public than is a road in the open country. The city has the right to use both the cartway and sidewalk of a street to whatever depth below the surface it may be desirable to go for sewers, gas and water mains, and any other urban uses, and for such use the owners of abutting properties are not entitled to damages.

*Natural gas company—Use of streets—Actions—Act of May 29, 1885.*

Under the act of May 29, 1885, P. L. 29, a natural gas company which

160	367
162	278

160	367
167	70

160	367
21 SC ²47

160	367
205	77
22 SC ²298

160	367
23 SC	211

160	367
209	²624
24 SC ²602
26 SC ²360

160	367
31 SC ²231
31 SC ²232
31 SC ²233

160	367
216	²568

160	367
f 34 SC ⁵381

has obtained the municipal consent to the use of a street, may lay its pipes under the sidewalk of a street without subjecting itself to liability for damages to the owners of abutting property under the condemnation proceedings provided by the act.

In such a case if the owners have suffered direct injury by the disturbed condition of the sidewalk during the process of laying the pipe, or consequential injury to their property due to the proximity of the pipe line, they must proceed by an action of trespass, or upon the company's bond, if such has been given.

*Streets—Sidewalks—Municipalities—Control.*

A municipality has the same control over the sidewalk that it has over the carriage way of a street.

Argued Nov. 14, 1893.   Appeal, No. 190, Oct. T., 1893, by defendant, from judgment of C. P. No. 1, Allegheny Co., March T., 1887, No. 659, on verdict for plaintiffs, James A. Mc-Devitt et al.   Before STERRETT, C. J., GREEN, WILLIAMS, Mc-COLLUM, MITCHELL, DEAN and THOMPSON, JJ.   Reversed.

Appeal from assessment of damages for laying natural gas pipe line under sidewalk.   Before SLAGLE, J.

The facts appear by the opinion of the Supreme Court.

Defendants filed the following exceptions to the petition for viewers:

" 1.   They deny that the petitioners have any title to any part of the premises occupied by exceptants described in said petition, the property line of the petitioners being the street line of Forbes street, as exceptants believe and expect to be able to prove.

" 2.   That Forbes street for the entire width of it, including cartways and sidewalks, is a public highway appropriated by law as and for a public street in the city of Pittsburgh, and as such public street includes in its dedication public uses under the surface thereof as well as on it, for its whole width; that exceptants are a corporation duly organized under act of May 29, 1885, and the purposes of their organization are by said act declared to be public purposes, and that in pursuance thereof they are vested with authority to enter in and upon streets, lanes and alleys of the city of Pittsburgh, for the purpose of laying their pipes, etc., for the transmission of natural gas to consumers, and that for such taking no compensation is required to be given.

"3. That this proceeding is not the proper one for securing remedy for consequential damages, if any, resulting to other property of petitioners by the use of the street as described in said petition.

"4. That for the taking aforesaid the forms of the statute have not been complied with."

The court overruled the exceptions. [1]

Viewers were appointed who filed a report awarding damages to plaintiffs. Defendant appealed from the award.

Defendant's points were among others as follows:

"2. The use of Forbes street by defendant is a public use, and as the owners of property abutting on public streets in the city of Pittsburg, including Forbes street, have no rights therein except such as are subordinate to the public use thereof, plaintiffs are not entitled to compensation for the use thereof by defendant under the natural gas act of 1885, such use being authorized by ordinance of the city of Pittsburg." Refused. [4]

"3. In this proceeding damages for an actual appropriation or taking can alone be recovered, and not consequential damages, and as plaintiffs do not aver any such taking or appropriation of their property or any easement thereon, they cannot recover." Refused. [5]

"5. If the court should refuse to affirm the foregoing points, it is requested to instruct the jury that plaintiffs can only in this proceeding recover damages caused by the laying or construction of the pipe line in itself, and not for injuries arising from the future use thereof." Refused. [7]

"6. Abutting property owners are not entitled to an assessment of damages under the natural gas act of May 29, 1885, where gas pipes are laid on the public street under legislative and municipal authority." Refused. [8]

"7. Plaintiffs have not shown any taking or appropriation by the defendant company of any private property of the plaintiffs or of any easement thereon, such as to entitle the plaintiffs to maintain this proceeding." Refused. [9]

Verdict and judgment for plaintiffs for $5,499.16.

*Errors assigned* were (1) overruling exceptions to petition; (2) in not sustaining plea of pending equity proceedings, recited in the opinion of Supreme Court, as bar to this action;

(4, 5, 7–9) instructions; quoting exceptions, plea in bar and instructions.

*S. Schoyer, Jr., W. S. Miller* with him, for appellants.—The action in the court below was misconceived; the exceptions to the report of viewers should have been sustained, and the petition for the appointment of receivers refused. The precedent conditions were not complied with: Act of May 29, 1885, P. L. 29.

Defendant in entering upon the sidewalk of Forbes street, upon which plaintiffs' property abuts, did not "take" property within the meaning of § 10, Act of 1885, P. L. 34; Appeal of City of Pittsburgh, 115 Pa. 4; Livingston v. Wolf, 136 Pa. 533; Lockhart v. Ry., 139 Pa. 423; Chambers v. Furry, 1 Yeates, 167; Lewis v. Jones, 1 Pa. 336; Sterling's Ap., 111 Pa. 41; Dillon, Mun. Corp. 699; Milhau v. Sharp, 15 Barb. 193; Pierce v. Drew, 136 Mass. 88; Cone v. Hartford, 28 Conn. 362; Angell on Highways, 25; Plant v. Long Island R. R., 10 Barb. 26; Chapman v. R. R., 10 Barb. 360; Jones v. R. R., 151 Pa. 30; Kelsey v. King, 32 Barb. 410; Cooke v. Flatbush Water Works Co., 27 Hun, 72; Jersey City Water Commissioners v. Hudson, 13 N. J. Eq. 420; West v. Bancroft, 32 Vt. 367.

It is not a taking or appropriation of private property for public use, for a natural gas company, duly incorporated under the act of 1885, to enter upon the public streets of Pittsburg and lay pipes therein, especially when so authorized by ordinance of the city authorities duly passed and approved: Pa. R. R. v. Duncan, 111 Pa. 352; Chester Co. v. Brower, 117 Pa. 654; Penna. R. R. Co.'s Ap., 115 Pa. 529; New Brighton v. Church, 96 Pa. 335; Snyder v. R. R., 55 Pa. 340; Watson v. R. R., 37 Pa. 479; Phila. & Trenton R. R. Co., 6 Whart. 45; Henry v. Bridge Co., 8 W. & S. 85; Danville R. R. v. Com., 73 Pa. 36; O'Connor v. Pittsburgh, 18 Pa. 187.

An action on the case is the proper remedy for the recovery of consequential damages under art. 16, § 8, of the constitution, in the absence of a statutory remedy. A jury to assess damages can only be appointed where property is actually taken: 30 Am. L. Reg., 1st Series, 483; Meyer v. Horst, 106 Pa. 552; R. R. v. Duncan, 111 Pa. 352; R. R. v. Patent, 17 W. N. 198;

Levering v. R. R., 18 W. N. 50; Ry. v. Holland, 117 Pa. 613; Chester Co. v. Brower, 117 Pa. 647; Appeal of Phila., 143 Pa. 414; Kershaw v. City, 27 W. N. 341.

The court below erred in instructing the jury as to the measure of damages: R. R. v. McChesney, 85 Pa. 522; R. R. v. Marchant, 119 Pa. 561.

*Geo. C. Wilson, F. M. Magee* with him, for appellees.—The land of plaintiffs was " taken " within the meaning of the act: Mallory v. Bradford, 1 Pa. Dist. R. 671; Art. 16, § 8, Const.; Jones v. R. R., 151 Pa. 30.

While the abutting owners might have maintained their action of trespass for the unlawful entry prior to the filing and approval of the bond, they were not bound to do so : Bethlehem South Gas & Water Co. v. Yoder, 112 Pa. 143.

The act of the gas company in occupying the sidewalk having been declared by the Supreme Court to be equivalent to a regular condemnation of the property, the damages were to be ascertained under the act of May 29, 1885, under which it is admitted the People's Natural Gas Company is incorporated, and from which it gets all its powers: Walsh's Case, 124 Pa. 544; Jones v. R. R., 151 Pa. 46.

OPINION BY MR. JUSTICE WILLIAMS, March 26, 1894:

The People's Natural Gas Company was incorporated under the act of 1885, P. L. 29, known as the Natural Gas Act, for the purpose of supplying natural gas to the citizens of Pittsburg for use as fuel. The city had given its permission to the company to occupy the streets with its mains and service pipes, and had undertaken to impose certain modes and restrictions upon it in the manner of conducting its business that have since been held to be unauthorized by law, and therefore without force or effect: Appeal of the City of Pittsburg, 115 Pa. 4. Pending the litigation over this subject, the company began laying its mains into the city, and in July, 1886, entered upon Forbes street in the city for that purpose. The appellees, who are the owners of lots on said street, then began proceedings by bill in equity, to restrain the company from laying its gas main under the sidewalk in front of their premises on Forbes street. Relief was asked on two grounds. First, because the ordinances of the city of Pittsburg had not been complied with by the

company.   Second, because the sidewalks along the sides of the cartways were not within the meaning of the act of 1885, and were no part of the highways, but were private property, except for the purposes of passage by pedestrians.   A preliminary injunction was granted, which was afterwards dissolved on condition that the company should execute a bond to indemnify the plaintiffs in that case for any loss they might sustain by reason of the laying of said main under the sidewalk in front of their premises.   The bond was given and the gas main laid.   The plaintiffs then made application for the appointment of viewers to appraise the damages done to their property by the laying of the main under the sidewalk.   Viewers were appointed, and an appraisement of the damages was made by them, which was appealed from.   On a trial before a jury a verdict has been rendered against the company for a few cents less than five thousand five hundred dollars; and the judgment entered thereon is now before us for review.

The first question, and a controlling one, is whether the proceedings on the application for the appointment of viewers in this case can be sustained.   It is urged that this question has already been passed upon by this court in a per curiam opinion disposing of the appeal by this company from the decree of the court below requiring a bond to be given as a condition precedent to the dissolution of the injunction restraining the laying of the gas main under the sidewalk in front of the premises of the plaintiffs.   [McDevitt's Ap., 6 Cent. R. 885; 7 Atl. R. 588.] It is probable the per curiam was written under the impression that the property affected was suburban.   The question then raised was over the power of the court to impose the condition. While it might have been unnecessary, it could not be said to be error to require the giving of the bond; since the plaintiffs were alleging that they had suffered, or would suffer, direct injury in the disturbed condition of a sidewalk which it was their duty to keep in repair, and a consequential injury to their land abutting thereon.   For whatever damage the company might do in the laying of its gas main, it was liable, and the chancellor had the power to require security to be given in advance for the payment of the amount when properly ascertained.   Beyond the question raised by the appeal and decided by this court, the case is not authority.   Upon that question, its authority is un-

questioned.   We are in a position therefore to enter unembarrassed upon a consideration of the subject brought to our attention by the first assignment of error.

The act of 1885 confers the right of eminent domain on companies formed for the transportation of natural gas.   In the exercise of this right they may enter upon private property or upon public streets or highways.   If the entry is upon private property the company must try " to agree with the owner as to the damage properly payable for an easement in his or her property, if such owner can be found and is sui juris." Failing to agree with the owner, the corporation must tender him a bond to secure the payment of damages ; and if this is refused, must apply to the court of common pleas of the proper county to approve the sufficiency of the bond.   After this has been done, viewers may be appointed by the court to assess the damages proper to be paid to the property owner " for the easement appropriated by the company."   If the entry is upon a public street in a borough or city, the corporation must first procure the consent of the municipality, expressed " by ordinance duly passed and approved."   So long as the gas main follows the street, the entry upon and occupation of the street is under the authority of the municipality.   Whenever it leaves the street and enters the private property of an individual, then the duty to negotiate with the owner arises ; since entry upon and occupation of private property must be under authority derived from the owner.   Forbes street was a city highway, and subject like all other streets in a city to urban servitudes for the benefit of the public.   In land taken for a highway in the country, the easement acquired by the public is only for the purposes of a way over the surface.   For all other purposes the land may be occupied by the owner so long as the public easement is not disturbed.   We accordingly held in Sterling's Appeal, 111 Pa. 35, that the maintenance of a pipe line under such a highway imposed an additional servitude upon the land. It may be a very slight one, but to some extent it abridges the rights of the landowner in the soil.   Our brother STERRETT said in that case : " As to streets and alleys in cities and boroughs, there are reasons why a different rule to some extent should prevail."   These reasons are obvious.   The necessity for drainage ; for a water supply ; for gas for purposes of light-

ing; for natural, or fuel gas, for heat; for subways for telegraph and other wires; and for other urban necessities or conveniences, give to the municipality a control over the subsurface that the township has not. Property in a city is no less sacred than property in the country. The title of the owner is neither better nor worse because of the location of his land. But its situation may subject it to a greater servitude in favor of the public in a large, compactly built city than would be imposed upon it in the open country. The city has the right to use the streets and alleys to whatever depth below the surface it may be desirable to go, for sewers, gas and water mains, and any other urban uses. In taking the streets for these necessary or desirable purposes it is acting not for its own profit but for the public good. It is the representative of the inhabitants of the city, considering their health, their family comfort, and their business needs; and every lot owner shares in the benefits which such an appropriation of the streets and alleys confers. If the city abridges his control over the soil in and under the streets, it compensates him by making him a sharer in the public advantages that result from proper drainage, from an abundant water supply, from the general distribution of gas, and the like. The disturbance of the owner's control over the subsurface of the streets is in a legal sense an invasion of his rights, but it is damnum absque injuria. He has no right of action against the municipality therefor: Dillon on Municipal Corporations, par. 691, § 699; Angell on Highways, § 207; Elliott on Roads and Streets, 299; Lockhart v. Railway Co., 139 Pa. 423; Sterling's Appeal, 111 Pa. 35. The use of the surface is not restricted to the modes of travel in common use when the street is opened, but such improved methods of travel as the public interest requires may be adopted with the consent of the municipality. In Rafferty v. The Central Traction Company, 147 Pa. 579, we held that the operation of a street railway on a public street, when authorized by law, does not impose an additional servitude on the land, whether the railway company employs horses or motive power, or a cable, or electricity. It is a legitimate use of the surface in aid of the public right of passage over the streets. The act of 1885 declares the transportation and supply of natural gas to be a public use, confers upon the corporations organized

under its provisions the right of eminent domain, and requires them to furnish natural gas to consumers along their lines or within the districts supplied by them respectively. The appellant was organized under the act of 1885. It came to the city of Pittsburg proposing to furnish its citizens with natural gas as a fuel. The city was then to judge whether such fuel was desirable, and whether its introduction would be a convenience to its citizens so great as to justify the occupancy of the public streets by its mains and service pipes. This question was decided in favor of the company, and permission was given to use the streets of the city as a means of reaching customers. Under this permission it might lawfully enter upon the streets, as we have already seen, to lay its pipes, without liability to lot owners therefor.

But it is contended that the sidewalks are not a part of the street, and that in laying its pipes under the sidewalk the gas company has entered private property by virtue of its power of eminent domain and must treat with the owner for the damages it may have done. This contention cannot be sustained. The act of 1874 gives to cities the power " To cause to be graded, paved or macadamized any public street, lane or alley or parts thereof which is now or may hereafter be laid out and opened in any of the said cities . . . . and to regulate, grade, pave and repave, curb and recurb, the said footways or sidewalks ; " and to make regulations concerning the deposit of lumber, building material or other articles " on any of the said footways, sidewalks or other portions of the said streets or alleys." The street includes the whole of the land laid out for public use as a highway. The city determines how much of it shall be devoted to a cartway and how much to a footway, and regulates the grading and paving of both. The separation of one from the other by a line of curbing is for the security of that part of the public that passes along the streets on foot and for no other purpose.

The municipality has the same control over the sidewalks that it has over the carriage ways: Livingston v. Wolf, 136 Pa. 533.

The learned judge of the court below took the same view of this question and affirmed the defendant's first point, which asked an instruction that the " defendants have the same right

in the sidewalks as they would have in that portion of the street lying between the curbstones." The situation of the defendants under this ruling was precisely the same as it would have been had the gas main been laid under the cartway. The defendant's second point asked the court to say that the lot owners on Forbes street had no rights in the street except such as were subservient to the public use under the direction or sanction of the city; and that as the defendant's gas main was laid for a public use, under the authority of the act of 1885, and with the consent of the municipal government, the lot owners along Forbes street were not entitled to recover damages for the use of the street. This point the learned judge refused. The logical result of this ruling is to put the rights of the lot owner, in the street in front of his premises, above the rights of the public represented by the municipality. In other words it puts the urban servitudes in a subservient position, and makes the imposition of each of them upon a city street an additional servitude upon the land of the adjoining lot owner for which he has a right of action. This is not the law in this state as is shown by the authorities already cited. As applicable to a country highway it would be quite right, for under the general road laws the public easement in such a highway is for passage over the surface only. Land taken for a street in a city is subjected to a very different easement, because of the sanitary and business needs of a city; and the extent of the easement depends on the municipal judgment as to the extent of occupancy necessary to subserve the health, the comfort and convenience of the citizens. Elevated structures that interfere with the passage of light and air stand on different ground. Jones v. The Railroad, 151 Pa. 30. In this case no entry was made upon the close of the plaintiffs. The pipe is buried in the street at a depth of four feet under the surface. Access to the plaintiff's property has not been affected. There is no physical change made in it or in the street on which it fronts. If the lots are affected in value it is as a consequence of the proximity of the gas line, and not because of anything done to or upon them. Their remedy under such circumstances is by action, or upon the bond given to secure them against loss by reason of the dissolution of the injunction. It is not by the appointment of viewers and the proceeding provided by the act of 1885 for the

assessment of damages done by an entry upon private property under the right of eminent domain.

The first assignment of error is sustained. Also the 4th, 5th, 7th, 8th, and 9th assignments.

The judgment is reversed and the order appointing viewers is set aside.

STERRETT, C. J., dissents.