## FREDERICK GAS COMPANY, INC. *v.* ABRAMS t/a Mott Industrial Limited Partnership

[No. 157, September Term, 1971.]

*Decided January 13, 1972.*

136

The cause was argued before HAMMOND, C. J., and McWILLIAMS, FINAN, SINGLEY and DIGGES, JJ.

*Sidney L. Bloom,* with whom was *W. Jerome Offutt* on the brief, for appellant.

No brief filed on behalf of appellee.

FINAN, J., delivered the opinion of the Court.

The dispute leading to this appeal arose when the Frederick Gas Company, Inc. (Gas Company), appellant, installed a four-inch natural gas transmission pipe line in unpaved 26 foot wide Mott Road, a county road in the Urbana district of Frederick County. Since the Gas Company felt that the installation was in a developing suburban area, it did not feel obligated to compensate the owner of the property which abutted the road for any taking of his property; to the contrary, Donald H. Abrams, t/a Mott Industrial Limited Partnership, appellee, who owned the property, maintained the area was rural and therefore he was entitled to compensation. In the lower court, the case turned on the factual issue as to the character of the neighborhood, i.e., whether urban or rural. The chancellor found the area to be rural and relying upon *Baltimore County Water Co. v. Dubreuil,* 105 Md. 424, 427, 66 A. 439 (1907), held that the Gas Company was compelled to acquire an easement from the property owner by way of a negotiated acquisition or by condemnation, within six months from the date of the court's decree or be subject to an order of court requiring the removal of the pipe line. In this appeal, since we are bound under Maryland Rule 886 to accept the finding of fact made by the chancellor, unless clearly erroneous, the only question we see before us is one of law, which, otherwise stated, is whether the rule established in *Dubreuil* is still viable.

In *Dubreuil,* the utility sought to lay water mains along the bed of Lake Avenue for a distance of approximately one mile in Baltimore County. The Court described the abutting property as "gentlemen's country residences, undeveloped property." It further added the properties "vary in size from ten to forty or fifty acres and most of them are improved by handsome residences which are some distance back from the avenue and have their own water supply. It is true there are a number of small towns, villages and developments within half a mile, or

less, of this avenue, but with the exception of the houses
near the corner of Falls Road there are very few fronting
on it." The court further voiced the opinion that the
property had not reached the stage of development where
the avenue had changed from a country highway to a
street, "as would justify us in applying to it the rule
applicable to streets in cities and towns."

Because of the importance of *Dubreuil,* in relation to
the case at bar, we deem it necessary to analyze in some
detail the opinion rendered for the Court by Judge Boyd,
later Chief Judge. In discussing the then state of the
law on this subject the opinion reads:

> "The law is well settled that, although the fee
> of streets in cities and towns is in the abutting
> owners, it is subject to the paramount right of
> the public for all proper street uses, which in-
> clude gas and water pipes, sewers, etc. Lights,
> water, and drainage are so essential to the com-
> fort, health, protection and convenience of the
> people of a city or town that the original owner
> is conclusively presumed to have known, and to
> have consented, that such uses could be made of
> a street laid out over land formerly owned by
> him, however it be acquired by the municipality,
> and those claiming under him have no more
> rights in the streets than he had; or, as a late
> book on municipal corporations expresses it:
> 'Ordinarily the use of streets for such a purpose
> [supplying water] does *not impose* any addi-
> tional burden or servitude, and the adjoining
> owners, therefore, are not entitled to compensa-
> tion for such use; it being one of the common
> and anticipated purposes to which they may be
> put.' 2 Abbott on Mun. Cor. 1165.
>
> "But the great weight of authority is to the
> effect that there is a distinction between the use
> of streets in cities and towns for gas and water
> pipes, and the use of country or rural highways.
> * * *

"*  *  * In *Mackenzie's* case, 74 Md. 47, the distinction is recognized and reasons given for it. In that case it was said of 'an ordinary road or highway in the country,' that 'all the public acquires is an easement of passage and its incidents,' and that in substance is the doctrine announced by most Courts." 105 Md. at 426-427.

Our predecessors in attempting to arrive at the heart of the issue in *Dubreuil,* stated:

"The real question to be determined in such cases is, whether the proposed use of a highway is such as can reasonably be said to be within the scope of the original easement."

The *Dubreuil* court further noted that in 1889, the Maryland Court of Appeals in *American Tel. & Tel. Co. v. Pearce,* 71 Md. 535, 18 A. 910 (1889) adopted the "scope of the original easement doctrine" as set forth in *Western Union Tel. Co. v. Rich,* 19 Kan. 517, and quoted *Pearce* to the effect:

"*  *  * It recognizes the right of the landowner to compensation for every additional burden cast upon the land outside the scope of the original easement, and that whether a given structure creates an additional servitude is a *question of fact,* depending on the circumstances of each case, to be determined by the tribunal having jurisdiction to try the same, and before which it is tried. *  *  *" 71 Md. at 543.

As was noted in *Dubreuil* an antithetical rule applies to public right-of-ways in urban areas, as contrasted with rural areas. Later cases make it clear that the distinction is better stated as being a different rule for rural as contrasted with non-rural areas. The latest expression of the law with regard to non-rural areas is found in *Green v. Washington Suburban Sanitary Commission,* 259 Md. 206, 269 A. 2d 815 (1970), wherein Judge Digges writing

140

for the Court paraphrased our comments in *Turner v. Washington Sanitary Commission,* 221 Md. 494, 158 A. 2d 125 (1960) stating:

> "* * * In that case we held that in a developing suburban area the right-of-way for a public highway extends not only horizontally over the surface of the land for the purpose of travel but also vertically below the surface of the roadbed for the purpose of laying sewer and water lines." 259 Md. at 219.

The Gas Company in the instant case would contend that the rule followed by our predecessors in *Dubreuil* and *Pearce* is archaic, that its *raison d'etre* is no longer valid. *State v. Cohen,* 166 Md. 682, 688, 172 A. 274, 94 A.L.R. 427 (1934). They argue, and with some logic, that decades ago property owners in urban areas being accustomed to the amenities of city life took for granted, and were conclusively presumed to have known, that the servitude against their property created by public right-of-ways was broad enough to include provisions for utility facilities which were necessary for telephone communication, electric lighting, gas heat, chlorinated water and indoor plumbing. Whereas, conversely, their "country cousins" did not expect to enjoy or have at their doorstep the comforts provided by utilities associated with urban life. As a consequence, rural property owners were not considered to have granted, within the scope of the easement, anything more than surface rights. *Chesapeake & Potomac Tel. Co. v. McKenzie,* 74 Md. 36, 47 (1891). Now, the appellants contend that with the passage of time the distinction in the life style between the city dweller and the rural resident has largely disappeared. They argue that not only do most rural residents enjoy one or more of the utilities identified only with urban living a few years ago, but that it is unrealistic to assume that he does not now expect the full complement of modern conveniences.

In support of its contentions the Gas Company relies

heavily upon *Pittsburgh National Bank v. Equitable Gas Co.*, 421 Pa. 468, 220 A. 2d 12 (1966) and *Zeigler v. Ohio Water Service Co.*, 18 Ohio St. 2d 101, 247 N.E.2d 728 (1969). In these cases the Supreme Courts of Pennsylvania and Ohio both rejected the doctrine which distinguished the scope of an easement for a public right-of-way in a *borough* or a *municipality* as contrasted with a public right-of-way in a *township* or *outside the municipal limits.* Before discussing these cases it is essential that we understand at the outset that the rural area *vis a vis* the non-rural area dichotomy recognized by our predecessors in *Dubreuil* was never as inflexible as the Pennsylvania and Ohio rule, which bound these jurisdictions to the artificial distinction imposed by the borough-township concept and the municipal limits rule, as our discussion of these cases will reveal.

In Pennsylvania the development of the law was such that in *Sterling's Appeal,* 111 Pa. 35, 2 A. 105 (1855), the court concluded that in a township any use of a public right-of-way, other than for travel, constituted an additional burden on the servient tenement for which compensation had to be paid to the abutting property owner. By contrast, in *McDevitt v. People's Natural Gas Co.,* 160 Pa. 367, 28 A. 948 (1894), it was held that a public right-of-way in a city or borough may be used for any public service without additional compensation to the abutting property owner. The inflexibility of this artificial distinction was further reinforced in *Duquesne Light Co. v. Duff*, 251 Pa. 607, 97 A. 82 (1916). It should be noted that the Pennsylvania rule permitted no latitude for suburban areas outside the limits of a city or borough, such as was recognized by the Maryland Court in *Turner v. Washington Sanitary Commission, supra.* In Pennsylvania, prior to the *Pittsburgh National Bank v. Equitable Gas Co.* case, if the public way was not in a city or borough the rule applicable to rural areas automatically applied. There was no room, by way of a finding of fact, to equate a developing suburban area with an urban area or city so as to apply the urban rule as was done by this

Court in *Turner v. Washington Sanitary Commission,* wherein we held that the city or urban rule applied to a suburban area which in that case was Georgia Avenue, extended, in Montgomery County.

The law in Ohio was similarly as inflexible as that of Pennsylvania. Ohio rested its distinction on public right-of-ways within a municipality as contrasted with those outside the municipal limits. Again, there was no opportunity for a factual determination based on the actual development of the area in the years subsequent to the original grant of easement. In *Zeigler v. Ohio Water Service Co., supra,* the Ohio court characterized the distinction existing in that jurisdiction as artificial and abolished it.

To give the appellants full benefit of its argument we quote from the decision in *Pittsburgh National Bank v. Equitable Gas Co., supra*:

> "The result reached in *Sterling's Appeal, supra, Duquesne, supra,* and kindred cases may have been correct at the time these decisions were rendered. Being far removed from the scene, it is now impossible for us to make a correct assessment. However, it is clear that some of these decisions were based, at least in part, on the erroneous assumption that what was contemplated when rural roads were established was something different than when a city road was involved. On the contrary, when any public road is established, it is clearly for the purpose of public travel and commerce. When roads were established for public use generations ago, it is hard to believe that the multiple uses now being made thereof were envisioned or considered. See, Note, 96 U. of Pa. L. Rev. 256 (1947).
>
> "As the means and modes of public commerce increase, what at one time would have been considered a burden on the abutting landowner is no longer so. The same holds true with respect

to easements appurtenant as it does to public easements, such as are here involved. Evolutionary changes must be considered in determining whether a burden is imposed on the servient tenement. See, Restatement, Property § 479 (1944).

"We believe it is common knowledge that the level of commerce in our townships has at least reached that existing in our cities and boroughs in 1894, the year *McDevitt, supra,* was decided. We are, therefore, of the opinion that there is now no need to apply a different rule in determining what constitutes a burden on a township road, as opposed to a city or borough street. The reasons for the distinction have disappeared.

"The township and so-called rural area of today are a far cry from the backwoods they were once pictured. Gas heat and electric light, which in the day of *Sterling's Appeal, supra,* were virtually unheard of outside of the city, are today commonplace in virtually all rural homes. The rural and suburban dweller has come to accept these conveniences as a way of life. This development makes the carriage of these items along our roads a part of the main stream of commerce which is thus included within the original public easement." 220 A. 2d at 16.

The language of *Pittsburgh National Bank v. Equitable Gas Co.* might be sufficient to persuade us to follow suit, if it were not for the very significant fact that the rationale of *Dubreuil* leaves room for expansion and transition of growth and population. The Court in defining its urban-rural dichotomy did not contemplate a static population or a society devoid of population shifts. It foresaw the osmosis of the rural by the urban, stating:

"* * * The tribunal whose duty it is to determine the question is not to be governed alone by the mode of user first adopted, or by the con-

ditions existing at the time the highway is acquired by the public." 105 Md. at 428.

This adaptability of the *Dubreuil* doctrine to changing times was recognized by Judge Henderson, later Chief Judge, in *Turner, supra,* in which opinion, although, noting that 3 Nichols, *Eminent Domain,* (3d ed.), Section 10.1 [1], p. 344 criticized *Dubreuil* as "fanciful," stated:

"We think the sentence last quoted [Dubreuil Case wherein the court recognized that a rural area by becoming more populated might change to an urban area.] is applicable in the instant case. It was stipulated that the area surrounding the Turner property, which was once rural, is now a fairly well populated area undergoing further development. It is suburban, rather than rural, in character, and the sewer in question is designed to serve public needs of the abutting owners and the expanding community, in a matter directly related to the public health.
* * *"

The court following the *Dubreuil* rural-urban dichotomy, held that the installation of the sewer line in Georgia Avenue, extended, in Montgomery County could be accomplished without payment of compensation to the abutting property owners as it came within the scope of the original easement; a result, we might add, which would have been impossible under the previous township-borough rule of Pennsylvania or the former municipality limits rule of Ohio.

It would also appear that some authorities rest the question of whether the utility installed in the public way is within the original scope of the easement on the factual determination of whether it is for the benefit of the immediate surrounding community, as appears from the following statement in 2 *American Law of Property,* Section 9.51 p. 487 (1952 ed.):

"Where the use of the highway under a fran-

chise from the municipality or state involves the subsurface of the way, there is a conflict between this use by the public and the rights of the owner of the fee to utilize the subsoil under the way. Generally the use of the subsurface of a public highway for the construction of sewers, water pipes, and gas or electric conduits has been held to be within the scope of the public easement of passage, where the utilities are for the benefit of the *immediate surrounding community*. The deprivation of the owner's use of this subsurface is so slight as compared with the benefit to the community as to have been within the contemplation of the parties at the time the public highway was created. But where the construction of the utilities is for the benefit of a distant community, such as a natural gas pipeline or a water main, it has generally been held that such use imposes an additional servitude so as to entitle the owner of the fee to additional compensation." (Emphasis supplied.)

In the instant case the gas pipe line, while it may have been available for use by the abutting property owner, was actually being constructed as a result of a request made by the owners of Old Orchard Estates, a development which lay north of the subject property.

In the instant case counsel for the Gas Company would urge upon us that Maryland has lost its rural characteristics and now consists of urban areas and suburbia and that no distinction should be made between these areas for the purpose of public easements. Although, they are perhaps closer to the truth than one might suspect, insofar as the physical aspects of the State are concerned, we still harbor the belief that there are rural areas which, as a matter of fact, are susceptible to such a determination.

As appealing and persuasive as the Gas Company's arguments appear, as a general statement it is flawed by

too many obvious exceptions. Although rural electrification is found most everywhere today and telephonic communication is almost as prevalent, yet in many rural areas there are no other utilities available. It is common knowledge that the inhabitants of rural areas in many places, in the absence of natural gas lines, depend on bottled gas; in the absence of water lines, they depend on wells, and in the absence of sanitary sewer lines they depend on septic tank systems for indoor plumbing.

Indeed, there are substantial reaches in Western Maryland and Southern Maryland, as well as on the Eastern Shore, where not even the sound of a train whistle or the hum of distant traffic breaks the spell of rustic tranquility. Yet, county roads may be found throughout such areas, and to adopt the rationale of *Pittsburgh National, supra,* that where a public road is established, it is clearly for the purpose of public travel and commerce, and, that such commerce envisions the installation of all modern forms of utility services, is an exercise in judicial activism in which we are not prepared to engage.

This Court has recognized the distinction between urban and rural right-of-way easements since *Dubreuil* in 1907, with vestiges of it dating back to *Peddicord's Case,* 34 Md. 463 (1871). Because our law permits the trier of fact to make a determination of fact, as to whether the area in which the right-of-way in question is located is a rural or non-rural area, we are not faced with the compelling reasons for changing our rule that confronted the courts in Pennsylvania and Ohio. With the law so well embedded in the precedents of this Court, if there is to be a change, we believe that it is more properly a matter for legislative action.

Our affirmation of the ruling by the lower court, is shadowed somewhat by the gloss of unfairness mirrored by the facts in this case. Here the property owner, who envokes the benefit of the rural public easement right-of-way doctrine of *Dubreuil,* had, shortly prior to this case, caused his property to be re-zoned from "agriculture" (A-1) to "planned industrial" (M-O). He is, therefore,

trying to reap the benefits of two worlds. However, Judge Clapp, and we believe properly so, found from the evidence that Mott Road was, as a factual matter, still in a rural area. The chancellor dismissed the "industrial" connotation supplied by the recent zoning classification, insofar as it affected the physical attributes of the area, stating, "All of these things are speculative hopes but I don't believe that speculative hopes can change the nature of the situation." We do not believe this conclusion to be in error. Rule 886.

It may well be that if utility companies believe that unfair advantage is being taken of them in their efforts to make services available to areas zoned industrial, while such an area is still in a rural ambience or a transitional state, that relief may be had in remedial legislation. Such legislation may well correlate the right to freely extend utilities along a public right-of-way, to zoning classifications, rather than having it determined by the rural *vis a vis* non-rural doctrine.

> *Decree affirmed, appellant to pay costs.*