(6 App. Div. 12.)

PALMER v. LARCHMONT ELECTRIC CO.

(Supreme Court, Appellate Division, Second Department. June 2, 1896.)

1. EMINENT DOMAIN—COUNTRY ROADS—OCCUPATION BY ELECTRIC LIGHT POLES.
    The occupation of a country road, the fee of which belongs to the abutting owners, by an electric light company, for the purpose of erecting its poles, is an additional burden, for which the owners of the fee are entitled to compensation.

2. SAME—DIFFERENCE BETWEEN CITY AND COUNTRY HIGHWAYS.
    The easements of the public in streets of cities and incorporated villages are greater than in country roads.

3. SAME—DENSITY OF POPULATION.
    The right of an abutting owner in a country road of which he owns the fee is not affected by the density of the population of the particular locality.

Appeal from Westchester county court.

Action by William D. Palmer against the Larchmont Electric Company. From a judgment entered on a decision in favor of plaintiff, defendant appeals. Affirmed.

Argued before BROWN, P. J., and PRATT, CULLEN, BARTLETT, and HATCH, JJ.

Wm. Sam. Johnson, for appellant.
Wm. Porter Allen, for respondent.

BROWN, P. J. This appeal presents the question whether an electric company, having a contract with the proper town authorities to light a public highway, may erect poles and wires upon said highway without the consent of the abutting owners. In Eels v. Telegraph Co., 143 N. Y. 133, 38 N. E. 202, the court of appeals decided that neither the state nor any corporation could appropriate any portion of a rural highway by setting up poles for the support of telegraph or telephone wires. That decision was based upon the fact that the fundamental idea of a highway was a place for the uninterrupted passage of men, animals, and vehicles, and to afford light, air, and access to the property of abutting owners; that in the latter respect an abutting owner had a greater interest in the highway

than the general public; that consequently any permanent or exclusive use of any part of the street by any person or corporation was illegal. Upon that theory of the law, it is impossible to make any distinction between poles to carry telegraph or telephone wires, and poles to support electric light wires. The counsel for the appellant, however, distinguishes Eels' Case from the case at bar on the ground that the maintenance and operation of a telephone or telegraph line is not a proper street use, while the maintenance of poles and wires for the purpose of lighting the street is a proper street use. The cases cited to sustain this argument—with two exceptions, which will be hereafter noticed—relate to easements in the streets of cities and incorporated villages, where such rights are conceded to be greater than in purely rural districts. It has never, however, been decided just how far the easements in urban streets will be extended beyond those in rural highways; and the court, in Eels' Case declined to decide the question, and its consideration is not important to our decision in this case. In the case of Gaslight Co. v. Calkins, 62 N. Y. 386, it was decided that a gas company had no authority to lay its pipes in a country highway without the consent of the abutting owners. In that case, however, the pipes were not sought to be laid for the purpose of lighting the highway, or the property of abutting owners. The principle of law, however, upon which the decision was based, was the same as that applied in Eels' Case,—that the right of the public in the street was a mere right of passage. Trustees of Presbyterian Soc. v. Auburn & R. R. Co., 3 Hill, 567. If, therefore, we were to decide this case solely upon the character of a country highway, and the rights therein of the public and the owners of the abutting land, it would be impossible to sustain the right of any person or corporation to appropriate absolutely to its use any part of the street. The possession of any part of the land would be adverse to the rights of the abutting owner, and totally opposed to the legal character of the public easement in the highway. The appellant cites two other cases, which may be briefly referred to. Van Brunt v. Town of Flatbush, 128 N. Y. 50, 27 N. E. 973, was an action by owners of lands fronting on Flatbush avenue in the town of Flatlands, to restrain the street and sewer commissioners, acting under an act of the legislature, from constructing a sewer through that avenue without the consent of the owners of the soil, or the acquisition of their title in the manner provided by law. The projected sewer was for the benefit of the town of Flatbush, and the inhabitants thereof, and not for the benefit of the owners of the lands along Flatbush avenue, in the town of Flatlands. The court held that the sewer could not be constructed upon the plaintiffs' property without their consent, or the acquisition of their title; but, in the course of the opinion, Judge Earl said:

"If the legislature had authorized a system of sewerage in the town of Flatlands, for the convenience, health, and welfare of the inhabitants of that town, and this sewer had been projected with lateral sewers, with the privilege of the owners of adjacent lots to connect their lots therewith, then we are inclined to believe, for reasons we need not now state, that the character of the avenue and of the locality was such, and the population is such, that the sewer could be built in the avenue without the consent of the

fee owners, and without compensation to them. The immediate benefits and advantages which they, in common with the whole community, might receive, might be all the compensation to which they would be entitled."

Witcher v. Waterworks Co., 66 Hun, 619, 20 N. Y. Supp. 560, affirmed in court of appeals without opinion (142 N. Y. 626, 37 N. E. 565), was an action by an abutting owner to compel the removal of water pipes from a highway in an unincorporated village. The plaintiff's complaint was dismissed at the trial, and this ruling was sustained by the general term of the Fifth department on the ground that the highway was to be treated as an urban street, and therefore was subject to be used for the purpose of supplying water to the inhabitants. In view of these decisions, the question before us is not free from doubt. While that part of Judge Earl's opinion which I have quoted was entirely a dictum, the legal principle which he asserts is doubtless sustainable under the health and police powers of the legislature. The decision in Witcher's Case, however, does, I think, sustain the contention that the streets in a populous community not incorporated as a city or village may be legally subjected to more extensive burdens than the ordinary country highway. The court in this case excluded an offer to show that the part of the town which was included within the appellant's contract was a populous village, and, if density of population is the test by which the question is to be determined, this ruling was wrong, and the judgment must be reversed. Serious practical difficulties will, however, be encountered, if the rights of abutting owners outside of cities and incorporated villages are to be dependent upon density of population. What is to be the line in respect to these easements which separate the urban from the rural district? Where do the more extensive urban easements begin and end? If we limit them to cities and incorporated villages, the rule is simple, and the rights of every landowner in the streets are easily solved. If we extend them outside of the incorporated villages, the rights of no landowner are settled, but each case must be determined on its own facts, and the decisions will vary with the varying minds and judgments of courts and petit jurors. The question as to the rights of an abutting owner in the street which bounds his property is one of law. The rule which controls it is a rule of property, and nothing can be plainer than that it should be certain and unvarying, and apply to whole communities alike. Any community may incorporate into a village, under our laws, by a vote of its inhabitants; and, in my judgment, highways should not be treated as urban streets, and impressed with the more comprehensive public easements that exist in cities, unless they lie within a city or an incorporated village. If any community desires to enjoy the benefits of urban life, and impose upon their streets more extensive easements than exist in rural highways, let it incorporate itself into a village. But, independent of this consideration, I think the case before us is controlled by the doctrine in Eels v. Telegraph Co., supra. That case, in its facts, is precisely like the case before us, except in respect to the use to be made of the poles

and wires. The distinction would be shadowy, I think, that would support, as a legal exercise of power, the erection and maintenance of poles and wires which carried an electric current to light a lamp on a street, but denied the right to erect and maintain precisely the same thing because it carried a weaker current of electricity, for the purpose of communication and the transmission of intelligence. The thing that is important to the rights of the landowner is the substantial physical structure on the surface of the highway. The use to which it is put is secondary and unimportant. If the question depends on the use, and courts are to distinguish between what is or what is not a proper street use, how can we say that a telephone or telegraph line is not as much a street use as a water pipe? A sewer drains the highway. A gas pipe or an electric light wire serves to light the street, but a water pipe has no necessary connection with the street itself. Its use is to conduct water to the adjacent houses, and serve to extinguish fires. But for the latter purpose it is useless without the fire engine or the fire department, and the wire which sounds the fire alarm, or serves to summon assistance, is as much a part of the system as the pipe which conducts the water. Indeed, the telephone and telegraph is as much of a necessity in modern life as any other of the conveniences which might fall under the designation of proper street uses. The Eels Case cannot be distinguished, therefore, from Witcher's Case, by saying that one represents a proper, and the other an improper, use of the street; and, unless they can be distinguished on other grounds, the latter case must be deemed to be overruled. These two cases were argued within three months of each other, and it is to be regretted that, in deciding the Eels Case, reference was not made to the decision in the Witcher Case. But while no reference was made to it by Judge Peckham, in his opinion, it will be observed, also, that he makes no reference to the subject of proper street uses. The decision, as I have already stated, is placed solely upon the ground of the character of a rural highway, and the legal rights of the public and the abutting owners therein. There is manifestly a very important physical difference, affecting the rights of the public and the adjoining owners, between the burden of an underground easement, and one which permits the erection of a structure above the surface. The right of uninterrupted passage, which the public enjoys in the traveled part of a highway, necessarily excludes the owners from all use and enjoyment of that part of the road. A pipe which is laid under the ground carries no permanent impairment to any public right on the surface, or any private right in the soil. On the side of the road the landowner has, however, substantial right, both in the surface and in the soil. In addition to the ordinary easement for light, air, and access, he may, on a country highway, plant shade trees, cultivate the sides of the road, and do anything to improve or beautify it or his own property, so long as his acts do not impair the public right of passage. Jackson v. Hathaway, 15 Johns. 447. The state not only invites him to plant trees, but it encourages him to do so by granting to those who do

this a substantial reduction in their road tax. Laws 1883, c. 371; Laws 1890, c. 568, § 44. A pole which supports wires cannot, like the underground pipe, be placed in the roadway; nor can it stand on the sidewalk, if there be such. From necessity, it must be placed between the two, or upon the side of the roadway, where the owner has substantial rights. Unlike the lamp post, the hitching post, or the hydrant, it does not occupy a small space, but it carries wires along the whole length of the street. It not only interferes with growing trees, but it prevents the planting and growth of new ones. The structure is unsightly, and the electric current carried on the wires may become, through carelessness or accident, dangerous, if not deadly; and it interferes (in a small degree, perhaps) with the access to the property. But it does interfere with, and perhaps destroys, the legal right of the owner to plant and grow shade trees, and to use the side of the road, and the use made of the street is of a permanent and exclusive character. As was said in Eels' Case, "such a use is wholly at war with that of the legitimate public easement in a highway." This view of the distinction between underground easements, and those which would permit the erection of poles and wires, has support in the principle underlying the decisions in the Elevated Railway Cases. In Craig v. Railroad Co., 39 N. Y. 404, it was held that, where one owned to the center of a street, the laying of rails for a horse railroad imposed an additional burden on the land forming the street, for which the owner was entitled to compensation. In Kellinger v. Railroad Co., 50 N. Y. 206, such relief was denied to an owner who did not own the fee, on the ground that there was no taking of his property, and the use made of the highway by the railroad was substantially the same as that made by other modes of travel. It was still a highway for passage and motion. But in the Elevated Railroad Cases, because the street was permanently, and to some extent exclusively, appropriated by the elevated structures, it was held that its erection without the consent of the abutting owners was illegal. Story v. Railroad Co., 90 N. Y. 122; Fobes v. Railroad Co., 121 N. Y. 505, 24 N. E. 919. If the view here expressed as to the distinction between pipes beneath a highway, and poles and wires above the surface, is sound, then there is no conflict between Eels' Case and Witcher's Case, and the case under consideration falls easily within the principle applied in the former decision, and the judgment must be affirmed.

Stress is laid by the learned counsel for the appellant on the fact that the right of the exercise of the power of eminent domain had not been conferred by the legislature on electric companies, while it had been upon all corporations that were authorized by the transportation law. This omission has now been remedied (chapter 446, Laws 1896), and it is within the power of such corporations to acquire the right to erect their poles and wires in any of the streets and highways of the state. It has never been decided in this state, as yet, that the state or any corporation has the right to erect and maintain poles and wires upon a country highway, for any purpose, without the consent of the abutting proprietors.

And, in view of the decision of the court of appeals in Eels' Case, I am unwilling to adopt or apply the rule which attempts to distinguish between the use of the streets for different purposes. In my judgment, the thing that is unlawful is the erection of the poles and wires without the landowner's consent, or the acquisition of his title, and it is of no consequence to what use the pole and wire is to be put after it is erected. While I yield to the force of the decision in Witcher's Case, I think any attempt to extend urban easements outside of incorporated villages will lead to confusion, and introduce into the administration of the law a rule affecting property which will render uncertain the rights of every owner of lands abutting on a highway. While these rights are not of great pecuniary value, they are important to the enjoyment of property, and no reason as yet has been suggested why they should be handed over to the electric corporations without compensation.

The judgment should be affirmed, with costs. All concur.