Dempster, Appellant, *v.* United Traction Company.

*Townships of the first class—Act of April* 28, 1899, *P. L.* 104—*Street
railways.*

Under the Act of April 28, 1899, P. L. 104, a township of the first class
is not turned into a borough, or anything resembling one.

In townships of the first class street railways cannot be constructed upon
the highways without the consent of the abutting property owners.

Argued Nov. 11, 1902. Appeal, No. 199, Oct. T., 1902, by
plaintiff, from decree of C. P. No. 2, Allegheny Co., Jan. T.,
1902, No. 755, dismissing bill in equity in case of Alexander
Dempster v. United Traction Company et al. Before MITCH-
ELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Re-
versed.

Bill in equity for an injunction.   Before SHAFER, J.

SHAFER, J., found the facts to be as follows :

1. Plaintiff is the owner in fee of certain property in the township of North Versailles, having a front of 707 feet on one side and 545 feet on the other side of a public road in said township.   The defendants are a traction company and a street railway company, which has leased all its property and franchises to the traction company.

2. The defendant street railway company has laid out branches, or extensions, of its road over certain roads, or streets, in the borough of Wilmerding and the township of North Versailles, one of which is in the bill called a township road leading to Stewart station, being the road which crosses the lands of the plaintiff, as above mentioned; and the defendants intend, if not restrained from so doing, to put an electric railway of the ordinary construction, with overhead wires, along said road in front of and through the property of the plaintiff.

3. The township of North Versailles is a township of the first class and was such when the branches, or extensions, above referred to were resolved upon.

4. The defendants have the consent of the local authorities of the township to build these branches and extensions.

The last conclusion of law was as follows :

We are of opinion, therefore, that in a township of the first class the municipality has the same control over the streets for urban necessities and conveniences as a borough has, and that this extends to enabling it to authorize the construction of street railways on the streets or roads of the township, and that such a railway on the streets of such a municipality is not an additional burden on the owner of the soil, and may, therefore, be built without his consent.

The plaintiff is, therefore, not entitled to the injunction prayed for, and the bill should be dismissed at the plaintiff's costs.

*Error assigned* was decree dismissing bill.

After the appeal was taken, a petition for leave to intervene on the ground that they were greatly interested in the question involved and would be affected by its decision, was filed

in the Supreme Court by certain citizens of Lower Merion township, Montgomery county and Radnor township, Delaware county, both townships of the first class.

*James R. Sterrett,* with him *Thomas Patterson* and *M. W. Acheson, Jr.,* for appellant.—The general act of 1889, regulating the formation of street railway companies, is substantially a consolidation of the various acts relating to the same subject which preceded that act, and an examination of these acts shows conclusively that it was never intended to confer authority to construct these city conveniences in country districts : Penna. R. R. Co. v. Montgomery County Passenger Ry. Co., 167 Pa. 62 ; Sterling's App., 111 Pa. 35 ; McDevitt v. People's Nat. Gas Co., 160 Pa. 367.

Classification of townships did not change the character of property from suburban to urban. It merely conferred upon the representatives of townships of the first class the power of imposing upon their highways certain enumerated urban servitudes, and street railways are not among these.

Practically all the powers conferred under the act relate to highway control, already existing in the former townships, except the powers to pave and sewer. Comparing, now, these powers with those granted to boroughs, we find that the difference is much greater. The boroughs have authority to open and close streets, without application to court ; that is to say, they may both lay out and open, while in townships of the first class there is power to open only where the street is laid out by some other lawful authority. A borough can pave and assess the cost of the pavement upon the abutting property owners. A borough can also, of its own motion, direct the setting of curbs and the laying of sidewalks. It can also lay water and gas pipes, and manufacture its own light.

*John G. Johnson,* for intervenors.—No statute of Pennsylvania permits the laying of a passenger railway on any street or road, outside of a city or borough, without the consent of the abutting property owners : Penna. R. R. Co. v. Montgomery County Pass. Ry. Co., 167 Pa. 62 ; Hannum v. Media, etc., Electric Ry. Co., 200 Pa. 44.

.. Even under an act of assembly authorizing the construction

of a quasi public improvement in, or upon, roads outside of cities and boroughs, such improvements cannot be erected saving upon terms of compensating the abutting property owner: Sterling's App., 111 Pa. 35; Rafferty v. Central Traction Co., 147 Pa. 579; McDevitt v. People's Nat. Gas Co., 160 Pa. 367.

The township classification acts of 1899 and 1901 confer no power to construct passenger railways on roads outside of the limits of cities and boroughs.

The legislature cannot authorize the construction of quasi public improvements, such as passenger railways, on public roads outside of cities and boroughs, without compensating the abutting property owners.

*J. H. Beal,* with him *J. H. Reed, Edwin W. Smith, George E. Shaw* and *Samuel McClay,* for appellees.—The general street railway act authorizes the building of street railways upon highways outside of cities and boroughs: Penna. R. R. Co. v. Greensburg, etc., Street Ry. Co., 176 Pa. 559.

Streets or highways in first class townships are subject to the easements required for urban necessities or conveniences, and a street railway, being an urban convenience, the consent of the abutting property owner is not necessary for its construction and operation: Rafferty v. Central Traction Co., 147 Pa. 579; Case of the Philadelphia & Trenton R. R. Co., 6 Wharton, 25.

The only difference between a borough government and the government of a first-class township would seem to be in the machinery provided by the act for carrying on the affairs of the district. The legislature has determined that first-class townships require the same powers with respect to their highways as are now possessed by boroughs, but that they do not need the same complicated machinery for carrying out those powers, and therefore we find they conferred the powers granted upon a board of five commissioners instead of upon a body called councils consisting of seven members, a burgess and the other officers provided for boroughs.

It is of no consequence that the legislature in these acts retains the name "township." It is the form of municipal government and the powers conferred which is important. The legislature recognizing the needs of townships in the neigh-

borhood of large cities and boroughs containing 300 people to the square mile, granted to them large municipal powers. To incorporate a city there must be 10,000 people in one community. To incorporate a borough, there must be a village or collocation of houses. A township is the only other political division less than a county. A township may be very populous and require urban necessities and conveniences and yet not possess 10,000 inhabitants or constitute a village, and it may not require as elaborate machinery for carrying on its government as is provided for boroughs. In such a district a street railway is as much a convenience and necessity as a public sewer, a supply of water, gas, or a fire department.

There can be no doubt that when the legislature conferred upon townships of the first class the power to construct sewers, to light the highways and to provide a water supply, it imposed additional servitudes upon the highways, and the servient estate of the abutters. It is perfectly clear that under these acts, water pipes, gas pipes and sewers may be laid in the streets, poles and wires for electric lines may be erected in the highway, and all without the consent of the abutting property owner, and without payment of any damages to him. If the township authorities are authorized to provide these urban conveniences and necessities, how can it be said that they do not have like authority with respect to street railways? It is a precisely similar urban convenience.

OPINION BY MR. JUSTICE DEAN, January 5, 1903:

The defendant is a street railway corporation organized under the general acts of 1887 and 1889; it obtained the consent of the commissioners of North Versailles township to run on a public road in the township leading from Wilmerding to Walls station. The township is one of the "first class" under the Act of April 28, 1899, P. L. 104. In laying out the route of its railway it adopted the township road mentioned; this takes it on and over the road through plaintiff's land which abuts on the road 707 feet on one side and 545 feet on the other; he objected to it going through at all; it claims the right to go through without his consent and that it is not answerable to him for damages. Plaintiff then filed this bill to restrain the company from constructing its railway on the road through his

land. The court below after hearing dismissed the bill and we have this appeal by plaintiff from that decree.

In his opinion filed the learned judge of the court below held, that a township of the first class under the act of 1899 and those supplementing it in 1901, is as regards public roads, not essentially different from cities and boroughs and has the same power over its highways as the latter have over their streets and alleys, and like them is exempt from answerability for damages for improvements on or under the highways; and while the right to authorize street railways in townships of this class is not expressly given by the statute, it is fairly to be implied, because the public convenience and necessities of the citizens of the one are practically the same as in the other; and he cites as legislative recognition of such necessities, the provisions in the township classification acts, giving the municipality power to lay out, open, grade streets and require payment therefor by property benefited, to require abutting owners to pave and curb sidewalks, to establish a system of sewerage and to assess the cost on property benefited, to erect waterworks and supply water, to maintain fire engines and to do, other acts which cities and borough are authorized to do. That in all respects townships of this class are completely assimilated to boroughs. If water and gas companies are not bound to pay damages to the abutting owners for laying their pipes, he asks, why should a street railway be considered an additional burden and be answerable to him in damages?

The answer and the only answer is, no statute has relieved it from such liability, no decision of the courts of this commonwealth has held that it was not liable. This is conceded by the learned judge and he says: " The question is one of first impression so far as we have been able to discover." In holding that a railway company is not answerable for imposing such a burden on the property owners we are met first by section 8, article 16 of the constitution : " Municipal and other corporations and individuals invested with the privilege of taking private property for public use shall make just compensation for property taken, injured or destroyed by the construction or enlargement of their works, highways or improvements, which compensation shall be paid or secured before such taking, injury or destruction."

In Sterling's Appeal, 111 Pa. 35, we held that " laying a pipe line at the ordinary depth under the surface necessarily imposes an additional burden upon the land, not contemplated either by the owner or the public authorities when the land was appropriated for a public road." That, except subject to the mere right of passage to the public by the ordinary methods, the land was still the owner's, the same as before the road was laid out. Then in Penna. R. R. Co. v. Montgomery County Passenger Ry. Co., 167 Pa. 62, we held that until there was legislation relating to them specifically authorizing the construction of street railways upon the highways or in country districts without the consent of the abutting owners, that consent must be obtained. In both these cases we as plainly held, as language could put it, that to construct an electric railway track or pipe line on or under a public road was an additional burden on the abutting owner, and therefore, was a taking of or injury to his property, for which the constitution, not the legislature, guaranteed him compensation. Whether it be expedient or wise to grant the right of eminent domain to a railway to the extent of occupying a public highway, is purely a political question for the legislature to answer, but whether such occupancy be a taking of private property or whether the use is a public one, are purely judicial questions for the courts to determine. We have in the cases cited and others, declared that such appropriation is a taking of private property, and that under the constitution the owner is guaranteed compensation. In Hannum v. Media, etc., Electric Railway Co., 200 Pa. 44, opinion by Justice MITCHELL, we distinctly announced our adherence to the principles enunciated in Sterling's Appeal and Montgomery county cases. There is nothing in the facts of the case before us to induce us to swerve from them. This is on the assumption, that North Versailles is a township in law and fact as well as name.

By the legislation concerning it a township of the first class was not turned into a borough or anything resembling one, any more than that legislation turned it into a city of the first class. It is settled law, that abutting owners on streets and alleys in cities and boroughs have no claim for damages by reason of the appropriation of the surface or subsurface for public improvements to the advantage and benefit of all the inhabitants; it is much easier to say that such is the settled law, than to give a

wholly satisfactory reason for it; the one usually given both in McDevitt v. People's Nat. Gas Co., 160 Pa. 367, and in many cases preceding it, is, that the borough is the representative of the inhabitants, considering their health, their family comfort and their business needs ; and every lot owner shares in the benefits which such an appropriation of the streets and alleys confers.   If it abridges his control of the soil, it makes him a sharer in the public advantage resulting from the appropriation. In a legal sense, it is an invasion of his rights, but that is damnum absque injuria.   But whether the reasoning to sustain the law be satisfactory or not, as a fact, the law is so deeply imbedded and firmly fixed as a rule of action, that it is not likely to be disturbed, at least in our day.   We assume then, that if the plaintiff were an abutting owner on a street in a borough he would have no standing to complain ; but he is not on a street of a borough but on an ordinary country road in a township ; how then can the railway company claim that he is in the same situation as a lot holder in a borough ?   The court below points out some special powers conferred upon townships of this class which are the same as the express or implied powers of boroughs under our general laws, and then says : " They (that is townships of the first class) are in all these respects completely assimilated to boroughs and cities. . . . We cannot see therefore why a street railway should be considered an additional burden in such a municipality if gas lines and the like are not."   This reasoning is not convincing.

Boroughs are very ancient municipal organizations, with well defined powers, privileges, duties and liabilities.   We inherited an aptness and desire for their organization from England.   In our earlier colonial history the large area of territory was divided into counties of such immense extent that it took several days traveling on horseback to reach the county seat ; these again were divided into townships, some of them the size of our present counties ; then from special causes, such as trading posts, ferry approaches or heads of river navigation, settlers became grouped in villages or towns and from these last came a demand for local government specially adapted to their needs ; so they severed from the larger territorial government of the township and erected the borough municipality.   It conveyed the idea, adopted from England, of a compact settlement, as

distinguished from a township and county. So through all the legislation since, the suggestion in thought is, of a town or village identical with the borough. The general act of 1834, not quite seventy years ago, provided for the method of incorporation of any town or village into a borough. Although under the general act of 1851 incorporation of boroughs with less than 300 inhabitants was authorized, the idea of compactness of population and territory was still adhered to. In Borough of Little Meadows, 28 Pa. 256, it was held, that the court had no jurisdiction to incorporate a territory one and three fourths miles square, a part of the lines of which run through a wilderness and which contains no collection of houses, collocated after a general plan in regard to streets and lanes.

Then came the act of 1863 which authorized the inclusion of farm lands adjoining a town or village in a borough, but at the request of the parties owning them the boundaries should be run so as to exclude them. But in all the subsequent legislation there is no departure from the original idea, that to erect a territory into a borough it must have as its base a town or village. The act of classification does not attempt to create a hybrid borough, neither township nor borough; it obviously intends to preserve the old township organization with all its powers and duties except where it expressly enacts otherwise. The preamble states : " Whereas, in those more populous townships which are in large measure devoted to residential purposes, there is need of a form of municipal government having greater powers than are now possessed by the local governments of townships under the existing laws." It then declares that townships having a population of at least 300 to a square mile shall be townships of the first class, and that all existing laws relating to townships except as modified by that act shall continue in force. Then the powers which such township ought to possess but which it did not have under the old organization are particularly specified as heretofore referred to ; nowhere in the act is it intimated, that as to existing roads and highways, have the commissioners any other or greater power than theretofore existed as to the imposition of an additional servitude, such as street railways. Nor could such servitude have been imposed by the legislature without at the same time providing compensation to the abutting owner for his property

taken for public use.   Calling the township a first class township did not make it a borough in name, nor do its physical characteristics make it one in fact.   It is not enough that many of its wants and perhaps necessities are those of a borough or city, and that some of these the legislature attempted to enumerate ; street railways are not one of them ; legislative silence excludes them.   However often the maxim " Expressio unius exclusio est alterius " has been misapplied, it is in point here.   There is no sound reason on which we can sustain the decree in this case, therefore it is reversed, the bill reinstated and injunction directed to issue in accordance with the prayer of the bill.