## Pittsburgh National Bank *v.* Equitable Gas Company, Appellant.

Argued March 21, 1966. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*William H. Eckert*, with him *Milton W. Lamproplos*, and *Eckert, Seamans & Cherin*, for appellant.

*Morris M. Berger*, with him *C. William Berger*, and *Berger & Berger*, for appellee.

*William H. Markus*, for amicus curiae.

*David Dunlap*, for amici curiae.

*Samuel G. Miller, Henry P. Sullivan, Donald Blanken* and *Vincent P. McDevitt*, for amicus curiae.

OPINION BY MR. JUSTICE EAGEN, May 24, 1966:

In 1921, Frank E. Mower and Viola B. Mower, his wife, acquired the title to land abutting Beatty Road,

an established public right of way, in Patton Township, Allegheny County. In 1951, the Mower property and the abutting public highway were incorporated into Monroeville Borough. In 1956, the defendant, a public utility company, laid a subsurface pipeline along the frontage of the Mower property for use in the distribution of natural gas to the public.

This action of trespass followed. It was commenced by the issuance of a summons. The Mowers were both named party plaintiffs. Viola B. Mower then died, and the complaint named Frank E. Mower as plaintiff alone. Before trial, Frank Mower died, and the executor of his estate was substituted as party plaintiff.

The plaintiff has elected to consider the alleged trespass as an appropriation of a right of way for the pipeline, and to have the damages assessed as if the action were an eminent domain proceeding.

At trial, the plaintiff contended that the pipeline was laid beyond the confines of the public right of way and wholly within the boundaries of plaintiff's property. The trial court correctly ruled that this position was not sustained by the evidence and was in conflict with the pleaded cause of action, since the complaint alleged that the pipeline was installed "within the right of way . . . over Plaintiff's property for road purposes . . . ."

The trial court then ruled as a matter of law that the owner of the property was entitled to compensation, even though the pipeline was laid wholly within the existing public right of way. It submitted to the jury a special interrogatory, to wit: What was the difference in the fair market value of the property before and after the pipeline was installed. The jury returned a special verdict in the sum of $9700.

Subsequently, the court en banc overruled the defendant's motion for judgment non obstante veredicto and amended the verdict to include detention damages

in the sum of $4,656, and judgment was, therefore, entered in favor of the plaintiff in the total sum of $14,-356. This appeal followed.

It has long been the law in this Commonwealth that an existing street or public road located in a city or borough may be used for *any* public service without additional or further compensation due the abutting landowners. See, *46 S. 52nd St. Corp. v. Manlin*, 398 Pa. 304, 157 A. 2d 381 (1960), and *McDevitt v. Gas Co.*, 160 Pa. 367, 28 A. 948 (1894). However, a different rule has been applied if the street or public roadway was located within a township. See, *Sterling's Appeal*, 111 Pa. 35, 2 A. 105 (1886).

The court below, with these rules in mind, reasoned that since the road involved was situated in a township when it was initially established for public use, the public acquired only the right of travel thereon, and all other rights remained vested in the abutting landowners from whom the right of way was taken. It con-cluded that the change of government from a township to a borough did not enlarge the scope of the public easement, nor diminish the abutting landowners' rights, and for the new use or the taking the plaintiff was entitled to compensation under both the Pennsylvania and United States Constitutions.

The issue for decision is one of first impression in the appellate courts of Pennsylvania. It calls into focus the nature, wisdom and foundation of the pertinent law previously followed in this Commonwealth in determining if an additional servitude is imposed on an abutting landowner by the installation of facilities for the public benefit along a municipal public roadway.

The heart of the difficulty in the problem presented lies in the common law and early Pennsylvania view concerning condemnation of land by municipalities. Thereunder, the condemnor did not acquire a fee simple

title in the land condemned in the absence of an express statutory provision that such was the case, but rather only the right to use and occupy the land for the purpose for which it was taken. Title to the subsurface remained in the condemnee.[1] There is no public record to show why or when the roadway involved was established. However, in 1915, Allegheny County took over the road and it is still under its jurisdiction. Hence the law of condemnation as it existed prior to the Acts of 1937 and 1949 (see footnote 1) applies.

Since under the early law, the taking of land by a municipality for public road purposes created only an easement in the public to travel thereover, the changes in the modes of travel and commerce created legal problems in connection with the question as to what constituted an additional servitude on the already established public easement. Our courts were first confronted with this dilemma in the latter part of the 19th Century.

In an effort to resolve the difficulty, distinct rules evolved. In *Sterling's Appeal,* supra, this Court held that the laying of a pipeline under the surface of a public road in a township constituted the imposition of an additional servitude on the abutting land for which compensation must be paid. The Court specifically limited the ruling to roads located in townships, and refrained from indicating what its decision would be if the road were located in a city or borough.

A few years later in *McDevitt v. Gas Co.,* supra, this Court refused to allow damages to abutting land-

---

[1] However, the Act of July 2, 1937, P. L. 2793, §§1 and 2, 53 P.S. §§1171 and 1172, provided a procedure to enable municipalities to acquire title in fee by eminent domain. Also, the Act of April 14, 1949, P. L. 442, §1, 26 P.S. §201, provided thereafter that title in fee would be acquired under eminent domain by any subdivision of the Commonwealth unless prohibited by the ordinance or resolution of the condemnation. See, Ladner, Conveyancing in Penna. 68, 69 (3d ed. 1961).

owners where a gasline was laid underneath a city street. The Court emphasized that land located in a city is just as sacred as that in a rural area, but stated nonetheless that the location subjected it to a greater servitude without additional compensation. It is significant to note that the Court did not, as some later authorities indicate, examine the use contemplated for a city street when the land is first condemned, as opposed to that envisioned for the establishment of a rural public road. Rather the Court looked to what was, at the time of the decision, considered a reasonable use for a city street and found that sewers, gas and water lines, and other typical urban uses were not such as to require the payment of additional compensation. Unfortunately, an additional unsound argument of "damnum absque injuria" was also included.

The distinct and different rules, governing the issue and recovery thus established, were preserved in *Duquesne Light Co. v. Duff,* 251 Pa. 607, 97 A. 82 (1916). However, therein the Court fell into the error which has precluded the future development of public uses of roads in township areas. In *Duquesne,* supra, the Court reasoned that when land for rural roads is taken originally, the only use contemplated is public travel, and, therefore, any other use requires payment of additional compensation. Such reasoning leaves the situation with grave logical inconsistencies. *McDevitt v. Gas Co.,* supra, ruled that city streets are not burdened by the addition of public utilities. In view of the reasoning in *Duquesne,* supra, the question naturally arises: What about city streets which were acquired and established while the area was still in a township. This is the specific problem in this case. Admittedly, if *Duquesne,* supra, is followed to a logical conclusion, then additional compensation is recoverable herein. However, as noted before, *Duquesne's* conclusion was based on what we believe to be an incorrect premise.

There is a textbook authority to the effect that in a case as here present, the test to be applied is the governmental character of the area when the pipeline is laid, not the character when the road was established. See, I Nichols, Eminent Domain, 476 (2d ed. 1917). The rationale is that the citizens consent to the additional servitude when they change the governmental nature of the area. See, *Palmer v. Larchmont Electric Co.,* 6 App. Div. 12, 39 N.Y. Supp. 522 (1896), rev'd on other grounds, 158 N.Y. 231, 52 N.E. 1092 (1899). Also, a reading of all analogous Pennsylvania decisions clearly indicates that the political designation of the area involved when the use takes place is paramount in determining whether the act of the defendant imposes an additional servitude on the abutting land for which compensation is payable. For example, see, *Dempster v. United Traction Co.,* 205 Pa. 70, 54 A. 501 (1903).

The result reached in *Sterling's Appeal,* supra, *Duquesne,* supra, and kindred cases may have been correct at the time these decisions were rendered. Being far removed from the scene, it is now impossible for us to make a correct assessment. However, it is clear that some of these decisions were based, at least in part, on the erroneous assumption that what was contemplated when rural roads were established was something different than when a city road was involved. On the contrary, when any public road is established, it is clearly for the purpose *of public travel and commerce.* When roads were established for public use generations ago, it is hard to believe that the multiple uses now made thereof were envisioned or considered. See, Note, 96 U. of Pa. L. Rev. 256 (1947).

As the means and modes of public commerce increase, what at one time would have been considered a burden on the abutting landowner is no longer so. The same holds true with respect to easements appurtenant as it does to public easements, such as are here

involved. Evolutionary changes must be considered in determining whether a burden is imposed on the servient tenement. See, Restatement, Property §479 (1944).

We believe it is common knowledge that the level of commerce in our townships has *at least* reached that existing in our cities and boroughs in 1894, the year *McDevitt,* supra, was decided. We are, therefore, of the opinion that there is now no need to apply a different rule in determining what constitutes a burden on a township road, as opposed to a city or borough street. The reasons for the distinction have disappeared.

The township and so-called rural area of today are a far cry from the backwoods they were once pictured. Gas heat and electric light, which in the day of *Sterling's Appeal,* supra, were virtually unheard of outside of the city, are today commonplace in virtually all rural homes. The rural and suburban dweller has come to accept these conveniences as a way of life. This development makes the carriage of these items along our roads a part of the main stream of commerce which is thus included within the original public easement.

This Court has recognized this development in a number of cases involving township roads, wherein it has permitted the installation of extensive drainage facilities without additional compensation being paid to the subsurface owners. See, *Rapetta Appeal,* 405 Pa. 284, 175 A. 2d 77 (1961), and *Brewer v. Commonwealth,* 345 Pa. 144, 27 A. 2d 53 (1942). We have also indicated by way of dicta in two recent opinions that the old distinction between township and city roads is no longer valid. See, *McCandless Township Appeal,* 409 Pa. 283, 186 A. 2d 393 (1962), and *McCandless Township Appeal,* 414 Pa. 168, 199 A. 2d 438 (1964). The time has now arrived for that dicta to become an absolute ruling.[2]

---

[2] We do not say that it is no longer possible to burden the abutting land by a new use. (See e.g., *Shinzel v. Bell Telephone*

  We, therefore, hold that the facts in this case do not establish the imposition of an additional burden on the servient land.

Since our decision concerns only the degree of use to which an already existing public easement may be put, the constitutional questions raised here and below are not relevant.

Judgment reversed and herewith entered for the defendant.

Mr. Chief Justice BELL and Mr. Justice COHEN concur in the result.

---

Co., 31 Pa. Superior Ct. 221 (1906)). If a use obstructs the abutting land or is of a new nature not in accord with the main stream of today's commerce, it will still be held a violation of the landowner's rights.