## Kopf v. Borough of Warren

*R. Stanley Mitchell,* for plaintiffs.

*James C. Blackman, local counsel,* for plaintiffs.

*John D. Eidemueller, Jr., Bernard O'Keefe,* for defendant Warren Borough and Borough Council Members.

*Joseph Barnhart,* for defendant Anthony Tomassoni, individually.

*S. E. Riley, John Wolford,* for defendants MacDonalds Corp., Welling, Meyell and Tac-Mac, Inc.

WOLFE, *P.J.,* July 3, 1985 — Defendants, Borough of Warren, Keith Ludwig, Superintendent of Warren Borough's Department of Public Works, and Anthony Tomassoni in his capacity as Warren Borough Council Member have moved for summary judgment. Defendant's motion is primarily founded in sovereign immunity as codified in Pennsylvania Consolidated Statutes 42, §8541 and 8542, and under Official Immunity under 42 Pa.C.S. 42 §8545 and 8546.

We have reviewed the entire record as well as the depositions filed and have studied the able briefs.

Rule 1035 of Rules of Civil Procedure permits, after the pleadings are closed, the entry of summary judgment on the pleadings, depositions, answers to interrogatories, admissions on file and supporting

affidavits, if any. Subsection (c) provides, inter alia, when the court has the motion under consideration it shall, if practicable, ascertain what material facts exist without substantial controversy and what material facts are actually, and in good faith, controverted.

Probably the most extensive and enlightening case interpreting Rule 1035 is Schacter v. Albert, 212 Pa. Super. 58, 239 A.2d 841 (1968), which explored all of the ramifications of the motion stating:

"The language of Rule 1035, adopted in 1966, was taken verbatim from Federal Rule of Civil Procedure 56 (c). Interpretation of the scope of Rule 1035 can be aided by reference to the cases decided under the Federal rule, which establish the following criteria. 'On motion for summary judgment the Court must consider the entire setting of the case and all the papers that are included in the record . . . One who moves for summary judgment has the burden of demonstrating clearly that there is no genuine issue as to any material fact . . . The Court must consider both the record actually presented and the record potentially possible at time of trial . . . A hearing on a motion for summary judgment is not a trial on the merits, and the Court on such motion should not attempt to resolve conflicting contentions of fact.' International Latex Corporation v. Lexicon Products, Inc., 37 F.R.D. 524, 525, 526 (E.D. Pa. 1965). The court is to accept as true all well pleaded facts in the plaintiff's pleadings, as well as the admissions on file, giving to plaintiff the benefit of all reasonable inferences to be drawn therefrom. Pittsburgh Hotels Ass'n., Inc. v. Urban Redevelopment Authority of Pittsburgh, 202 F.Supp. 486 (W.D., Pa.) aff'd., 309 F.2d 186 (C.A. Third Cir., 1962), cert. denied, 372 U.S. 916 (1963). The record must be examined in the light most fa-

vorable to the nonmoving party. Fiumara v. Texaco, Inc., 204 F.Supp. 544 (E.D., Pa.), aff'd., 310 F.2d 737 (1962). In passing upon a motion for summary judgment 'it is no part of the court's function to decide issues of fact but solely to determine whether there is an issue of fact to be tried. All doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for summary judgment.' (In the instant case, appellee.) Admiral Corporation v. Cerullo Electric Supply Co., 32 F.R.D. 379, 380 (M.D., Pa. 1961). '. . .a party should not be deprived of an adequate opportunity to fully develop (sic) his case by witnesses and a trial, when the issues involved make such procedure the appropriate one . . . It is often the case that although the basic facts are not in dispute, the parties in good faith may nevertheless disagree about the inferences to be drawn from these facts, what the intention of the parties was as shown by the facts . . . Under such circumstances the case is not one to be decided by the Trial Judge on a motion for summary judgment.' S. J. Groves & Sons Company v. Ohio Turnpike Commission, 315 F.2d 235, 237, 238 (C.A. Sixth Cir.), cert. denied, 375 U.S. 824 (1963)."

Instantly, the facts to resolve the motion are not in dispute. The Department of Public Works of defendant Warren Borough, acting through its superintendent, defendant Keith Ludwig, removed two maple trees owned by plaintiffs located on the right-of-way of the Borough of Warren. The history leading to the removal of the trees primarily was a request by defendant Ron Welling, acting on behalf of defendants Meyell, Inc., and Tac-Mac, Inc., to defendant Anthony Tommasoni to remove the two sugar maple trees. The alleged reason for the removal of the trees was that they were obscuring the

view of a MacDonald's Restaurant sign erected on property owned by MacDonald Corporation and leased to defendants Meyell, Inc., and Tac-Mac, Inc. The complaint alleges that:

". . . on or about July 20, 1983, defendants Borough of Warren; Keith Ludwig; Anthony Tomassoni; Tomassoni Nursery; and, by and through Rod Welling, Tac-Mac and Meyell did unlawfully agree to have the two healthy shade trees removed and destroyed without notice to the plaintiffs, the property owners, knowing that the trees were not on the property subleased by Meyell."[1]
Plaintiffs allege that:

"The defendants Ludwig and Tomassoni as a councilman, and thus through them the defendant Warren Borough, intentionally used their influence and positions to favor and secure for Tac-Mac and Meyell that to which they were not entitled at the expense of the Plaintiffs, the adjacent property owners, with the actual prior knowledge that the plaintiffs would suffer substantial injury to their property interests or awareness that said injury was substantially certain to follow."[2]

The depositions conclude defendant Tomassoni and Sons were the nursery that removed the trees and did so acting through defendant Anthony Tomassoni.

The depositions of Keith Ludwig and Anthony Tomassoni reveal that there was some thought process the borough was to remove the trees prior to the request by defendant Tomassoni due to disease [sic], and the issue of removing the trees was raised allegedly by defendant Tomassoni at an executive session of the Borough Council.

---

1. Paragraph 19 — Count 1 of the Amended Complaint.
2. Paragraph 25 of plaintiff's amended complaint.

There is no dispute plaintiffs had no knowledge of, nor did they consent to, the removal of their trees, nor were they given any notice of the intended removal of the trees, nor have they received any of the wood from the trees as was the borough's policy.

Plaintiff argues on the basis of the holding of Deets v. Mountain Top Area Joint Sanitary Authority, 84 Pa. Commw. 300, 479 A.2d 49 (1984), plaintiff has the option to bring the present action either in trespass or under the eminent domain code. Our reading of Deets does not specifically hold this contention:

"If the taking of a land owner's property by an entity clothed with eminent domain power is done without a prior declaration of taking, our Supreme Court *has indicated* that the property owner has the option of seeking damages in an action in trespass or compensation for the actual taking under eminent domain. See Pittsburgh National Bank v. Equitable Gas Company, 421 Pa. 468, 220 A.2d 12, Cert. denied, 385 U.S. 988, 87 Supreme Court 600, 17 L.Ed. 2d 449 (1966); Garland Chain Company v. Rankin Borough, 226 Pa. 389, 25 Atl. 607 (1910). In such a case, if the land owner seeks an appointment of viewers to assess compensation for the taking, the land owner is deemed to have. waived the trespass." (Foregoing citations, emphasis added.)

In Pittsburgh National Bank v. Equitable Gas Company, supra., defendant utility laid its gas line in the subsurface of the township road. Plaintiff contended this was an additional burden to the servient estate and therefore compensable. In passing upon plaintiff's contention the court merely alluded:

"The plaintiff has elected to consider the alleged trespass as an appropriation of a right-of-way for the

pipeline, and to have the damages assessed as if the action were an eminent domain proceeding."

In Deets, supra., the court's reference to the option of plaintiff appears to us to be more of dicta rather than a holding of law. The court in Deets, supra., simply observes that our Supreme Court has indicated an option exists; however, a close reading of Pittsburgh National Bank v. Equitable Gas Company, supra., clearly shows the court held plaintiff made an election to consider plaintiff's trespass action considered as one of eminent domain [sic] for purposes of assessing damages. Instantly, the Borough of Warren obviously has the power of eminent domain and it is undisputed the borough removed plaintiffs' trees without their consent and has not paid any damages therefore. This is a de facto taking; however, considering the facts of this case, it becomes clear that eminent domain procedure is not appropriate. Accepting the facts pleaded as true, as we must at this stage, it cannot be concluded that moving defendants cut the trees privately owned for the benefit of the general public good and welfare.

Even if our reasoning be incorrect as to the proper procedural tool, no preliminary objections were filed pursuant to Pa.R.C.P. 1017 by defendants.

The Governmental Immunity Act, 42 Pa.C.S. §8541, is directed to the negligent acts of the local agency. This is so as section 8542 addressing the exceptions to governmental immunity, §8542 (a), mandates that one of the requisites for potential liability is:

"(2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, 'negligent acts' shall not in-

clude acts or conduct which constitute a crime, actual fraud, actual malice or willful misconduct."

In our view the language "willful misconduct" must be read and weighed in the same context as conduct which constitutes a crime and actual malice.

The legislative history of sovereign immunity was compiled by a study of the Joint State Government Commission, which submitted its report to the General Assembly of the Commonwealth on May 22, 1978. In addressing areas of liability not waived by the government, the Legislative Task Force specifically rejected waiving sovereign immunity for claims arising out of:

"(1) Intentional torts such as assault and battery, false imprisonment, false arrest, malicious prosecution, abuse of privacy, libel and slander, misrepresentation, deceit, interference with contract rights, fraud and invasion of privacy.

(2) The improper assessment of taxes.

(3) Seizure and detention of personal property.

(4) Product liability.

(5) Civil rights and constitutional violations.

(6) Quarantine restrictions.

(7) Adverse possession against the Commonwealth.

(8) Negligence of private independent contractors.

(9) Improper licensing or delay in granting of licenses, permits, etc.

(10) Failure to inspect or improper inspection."·

It is therefore apparent the legislature had no intentions of waiving intentional torts.

The Political Subdivision Tort Claims Act is Constitutional, Carroll v. County of York, 496 Pa. 363, 437 A.2d 394 (1981); Robson v. Penn Hill School District, 63 Pa. Commw. 250, 437 A.2d 728 (1981). .

Although not cited in counsels' briefs, our independent research has revealed the case of Buskirk

v. Seiple, 560 F.Supp. 247 (E.D., Pa. 1983), which we conclude controls the instant case. In Buskirk, supra, individual plaintiffs were allegedly malevolently mistreated at the hands of police officers of Bushkill Township, Moore Township, Upper Nazareth Township and Tatamy Borough (Northampton County). Individual defendants and the municipalities raised as their defense the Tort Claims Act shield; and the court, in considering the individual defense as well as the municipality defense, said this:

"Defendant, Upper Nazareth Township, argues that the Tort Claims Act shields it from the pendent, state tort claims asserted by plaintiffs in Counts III through VI. Specifically, Upper Nazareth asserts that it cannot be liable for the alleged tortious misconduct of various police officers since the complained of activity fails to fall within any delineated exception to its municipal immunity. 42 Pa.C.S. §8542(b)(1)-(8). Responding, plaintiffs point out that each pendent claim charges a willful, intentional tort and that the act does not purport to shield political subdivisions from such allegations. 42 Pa.C.S. §8550.

"We reject plaintiffs' construction of the Tort Claims Act because their broad, expansive reading of 42 Pa.C.S. §8550 is, in view of the statutory language, unwarranted.

"The Tort Claims act establishes the general rule that, except as otherwise provided 'no local agency shall be liable for any damages . . . caused by any Act of . . . an employee therefrom.' 42 Pa.C.S. §8541. the next statutory subsection, 42 Pa.C.S. §8542(b)(1)-(8), provides eight specific exceptions to this rule. However, in order to come within any of these exceptions, two conditions must be met. 42 Pa.C.S. §8542(a)(1) and (2). First, the damages

sought must be recoverable pursuant to common or statutory law under circumstances which would not otherwise admit to any immunity defense. Second, the complained of conduct must sound in negligence. Allegations of criminal conduct, actual fraud, malice or willful misconduct do not fulfill this second requirement. 42 Pa.C.S. §8542(a)(2). Specifically, Pennsylvania permits damage recoveries against political subdivisions for negligent conduct arising out of automobile accidents, the care and custody of real property, dangerous conditions created by trees, traffic control and street lighting, utility service facilities, improper street and sidewalk maintenance and the care, custody and control of animals. 42 Pa.C.S. §8542(b)(1)-(8).

"Plaintiffs' reference to 42 Pa.C.S. §8550, relating to willful misconduct, as subsuming 42 Pa.C.S. §8541's general retention of municipal immunity is misplaced. True, 42 Pa.C.S. §8550 waives four specific immunities for willful misconduct, i.e., immunities relating to official liability, official immunity, indemnification and damage limitations. See 42 Pa.C.S. §§8545, 8546, 8548, 8549. Each of the waived immunities, however, exposes municipal employees to personal liability without dissolving the shield of general immunity retained by municipalities. For example, 42 Pa.C.S. §8545, one of the immunities abrogated for willful misconduct, generally prohibits affixing greater liability upon a municipal employee than attaches to a municipality. 42 Pa.C.S. §8546, another waivable immunity, usually protects 'employee(s) of local agenci(es)' and not the agencies themselves. Hence, when the protection provided by this section is lost, only those who generally benefit from its existence, municipal employees, are subjected to liability. The same is true for 42 Pa.C.S. §§8548 and 8549, each of which ad-

dresses actions 'brought against an employee of a local agency.'

"Hence, we conclude that Pennsylvania, by passage of the Tort Claims Act, has generally retained sovereign immunity for its political subdivisions. This municipal immunity is waived for only eight types of negligent conduct. 42 Pa.C.S. §8550 jettisons only those immunities held by municipal employees and only then for forms of willful misconduct. This section does not, however, abrogate the general retention of municipal immunity.

This interpretation of the Tort Claims Act comports with a recent judicial decision, Lopuszanski v. Fabey, 560 F.Supp. 3 at 6 (E.D. Pa. 1982) (VanArtsdalen, J.) and a learned commentator's analysis. The Political Subdivision Tort Claims Act: Pennsylvania's Response to the Problems of Municipal Tort Liability,84 Dick.L.Rev. 717 (1980).[3] In addressing this same issue an author observed that although the 'liability of a political subdivision is based primarily on personal liability of its officials through the operation of respondent superior,' the Tort Claims Act does not purport to impose governmental liability for the willful, tortious misconduct of its employees. Id. at 747 and 750. We will accordingly grant Upper Nazareth's motion to dismiss the pendent claims.[5]" (See note below.)

---

3. Publication of the Joint State Government Commission/May 1978. The Commission was created by Act of July 1, 1937, P.L. 2460, as a continuing agency for the development of facts and recommendations on all phases of government for the use of the General Assembly.

Quote Footnote:

"5. This same conclusion warrants dismissal of the pendant claims asserted against defendants Moore Township, Bushkill Township and Tatamy Borough."

Instantly, plaintiffs' allegations of willful tort by the borough's agents (Ludwig and Councilman Tomassoni) do not attach to the borough by way of respondeat superior. It is therefore clear the Borough of Warren must be granted summary judgment in its favor and denied as to the individual employees Keith Ludwig and Anthony Tomassoni in his capacity as a Warren Borough Council member.

For these reasons we enter the following

## ORDER

And now, this July 3, 1985, the motion for summary judgment of the Borough of Warren is granted.

The motion of Keith Ludwig, Superintendent of Warren Borough Department of Public Works, and Anthony Tomassoni, Warren Borough Council Member, is denied.