COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANS- PORTATION, Plaintiff

v.

MUNICIPAL AUTHORITY OF The BOROUGH OF WEST VIEW, Defendant.

Commonwealth Court of Pennsylvania.

Argued Feb. 5, 2007.

Decided March 13, 2007.

Michael D. Alsher, Asst. Counsel, Harrisburg, for plaintiff.

Fred E. Baxter, Jr., Pittsburgh, for defendant.

BEFORE: PELLEGRINI, Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge PELLEGRINI.

Before this Court are cross-motions for summary judgment filed in our original jurisdiction by the Commonwealth of Pennsylvania, Department of Transportation (PennDot) and the Municipal Authority of the Borough of West View (Authority) requesting this Court to declare that the Political Subdivision Tort Claims Act (Tort Claims Act)[1] does not serve as a defense for the Authority to refuse to repair damage to Pennsylvania state highways caused by Authority water line breaks.

PennDot's declaratory judgment action arose from a leak on July 23, 1998, in an eight-inch subsurface water line owned by the Authority located beneath State Route (SR) 51 at 1323 Island Avenue in Stowe Township, Allegheny County. The Authority initially opened the highway based on an emergency permit it had previously obtained to excavate the highway, repair the leak, backfill the excavation, and apply a temporary "cold-patch" bituminous seal

1. 42 Pa.C.S. §§ 8541–8564.

to a portion of the highway.[2] On July 27, 1998, the Authority then applied for and PennDot granted a highway occupancy permit to perform the repairs and the highway restoration caused by the leak. Rather than restoring the highway damage caused by its leaking water line as required by the permit, the Authority only restored that part of the highway in the immediate area where the Authority had excavated to repair its water line. PennDot then revoked the highway occupancy permit and repaired the highway at a cost of $22,122.78. PennDot demanded payment from the Authority, which it refused to pay.

PennDot then filed a declaratory judgment action seeking a declaration that the Authority had to repair all damage to the highway caused by the leak in the water line, not just that portion damaged when repairing the break. It alleged that the water utility occupied the highway right-of-way by permission, which occupancy was conditioned on the utility complying with all of PennDot's regulations. It contended that the Authority refused to comply with its regulations dealing with the repair of its highways because on three separate occasions, the Authority applied for a highway occupancy permit to repair a leak in a subsurface water line,[3] indicating that it sought to repair damage caused by

its repair work, not damage caused by the break. Even though those applications were rejected, the Authority then entered the right-of-way, purportedly under an "emergency permit," and repaired only those damages caused by the repair work.

PennDot requested that we declare that the Authority has the duty to comply with PennDot regulations regarding occupancy of highways by utilities, including the duty to restore state highways damaged resulting from leaks in their facilities located in state highway right-of-ways, and declare that the provisions of the Tort Claims Act do not act as a defense to the statutory and regulatory liability of the Authority for the damage it causes to state highways through its leaky water facilities and the subsequent repair of those facilities. It also requested that we order the Authority to repay the $22,122.78 that it incurred to repair the damage to SR 51 caused by the July 1998 leak in the Authority's water line.

The Authority filed an answer and new matter denying the allegations, specifically denying that it did not fully repair the highway resulting from the July 23, 1998 leak and raising in new matter that it affirmatively pled as a defense its immunity from liability under the Tort Claims Act.[4] After discovery was closed, agreeing

2. Emergency work may be performed by first obtaining a permit from PennDot pursuant to 67 Pa.Code § 459.6. The permits are good for one year or 25 emergency repairs, whichever occurs first.

3. On July 9, 2001, the Authority applied for a permit to repair a leak in a six-inch subsurface water facility located beneath SR 4012 at 1007 North Starr Avenue in the Borough of Avalon, Allegheny County. On May 7, 2002, the Authority applied for a highway occupancy permit to repair a leak in an eight-inch subsurface water facility beneath SR 51 at 1321 Island Avenue in Stowe Township, Allegheny County. Similarly, on July 23, 2002,

the Authority applied for a highway occupancy permit to repair a leak in a six-inch subsurface water facility beneath SR 4011 at 2015 Babcock Boulevard in Ross Township, Allegheny County. The application identified a 9' by 14' opening to be made in the roadway to repair the broken facility.

4. It also affirmatively pled the limitation on damages pursuant to Sections 8549 and 8553 of the Tort Claims Act, both sections dealing with limitations on damages. Further, it argued that the claim for damages should be denied under the statute of limitations for negligence claims.

there was no genuine issue of any material fact, both parties filed motions for summary judgment, both of which centered on whether the Tort Claims Act applied to damages caused by a governmental utility facility to the owner of the right-of-way.

In its motion, PennDot argued that the Tort Claims Act did not act as a defense to the Authority's liability not to comply with its regulations requiring owners of underground facilities in PennDot right-of-ways to repair all damage to the right-of-ways caused by a failure of the underground facilities, because its occupancy of the right-of-way was conditioned on it agreeing to comply with its regulations, making the owner responsible for all damages caused by its facilities. In the Authority's motion, it argued that PennDot failed to plead any acts that would render the Authority liable under the Tort Claims Act, including any negligent acts. It also contended that the permit process did not establish any contractual relationship that would vitiate the protections it enjoyed under the Tort Claims Act.

■■■ When a governmental entity acquires a right-of-way for use as a street or highway, that governmental entity acquires ownership of that right-of-way in trust and can allow others to occupy the street or highway only for "public purposes." Utilities have been considered a "public purpose" and have been permitted to occupy the right-of-way subject to control and regulation of those governments who hold the right-of-way in trust for the public. *Bell Telephone Company v. Lewis,* 317 Pa. 387, 177 A. 36 (1935); *Pittsburgh National Bank v. Equitable Gas Company,* 421 Pa. 468, 220 A.2d 12 (1966).[5] However, "any use by a public utility [is] subordinate to the interest of the public," but "[a]t common law, ... could be ordered by the state or a municipal agency to remove and relocate their facilities, at the sole cost and expense of the utility." *PECO Energy Company v. Pennsylvania Public Utility Commission,* 568 Pa. 39, 47–48, 791 A.2d 1155, 1160 (2002).[6] Because at common law the owner of the right-of-way could revoke the utility's right to use the right-of-way at will, all that the utility had was a "license" to use the street. *See Puleo v. Bearoff,* 376 Pa. 489, 103 A.2d 759 (1954); *Hayes v. Philadelphia Electric Company,* 92 Pa.Cmwlth. 205, 498 A.2d 1019 (1985). As a mere licensee, any utility who occupies the right-of-way must do so in accordance with the terms and conditions imposed by the governmental entity that owns the right-of-way.

■■ Occupancy of state highways by public utilities and others is governed by Section 420 of the State Highway Law [7] which provides that PennDot "may issue permits for ... occupancy of State highways on terms and conditions established in department regulations." [8] Pursuant to

---

5. "A public utility corporation shall have the right to enter upon and occupy streets, highways, waters and other public ways and places" for the placement, maintenance and removal of facilities for railways, gas, electricity, water, sewage and telephone. 15 Pa.C.S. § 1511(e).

6. Title 15, Corporations, gives "public utilities" the right to occupy the public right-of-way, but before doing so, the public utility must "obtain such permits as may be required by law and shall comply with the lawful and reasonable regulations of the govern- mental authority having responsibility for the maintenance thereof." 15 Pa.C.S. § 1511(e). It only has the right to occupy the public right-of-way under that grant for the public utility service that it provides.

7. Act of June 1, 1945, P.L. 1242, *as amended,* 36 P.S. § 670–420.

8. Section 411 of the State Highway Law, 36 P.S. § 670–411, also provides that "no water pipe" shall be laid in a state highway "except under such conditions, restrictions, and regu-

the State Highway Law, PennDot's promulgated regulations provide the following regarding the damaging of highways:

(15) *Damaged structure or facility to be repaired.* If a structure or facility becomes damaged, *the permittee shall promptly have it removed, repaired or otherwise made safe.* The permittee is responsible for repair or restoration of the portion of the highway damaged by a structure or facility. The permittee's obligation to repair or restore the highway necessitated by a damaged structure or facility under this paragraph is separate from the obligations to restore the highway and obtain a bond relating to restoration and maintenance of the highway under § 459.5(b)ʼ (relating to issuance of permits). Compliance with paragraph (16) does not relieve the permittee of its obligations under this paragraph.

(16) *Damage to highway.* Responsibility of the permittee for restoration of the highway includes the following:

(i) If there is a failure of the highway, including a slope or other appurtenance thereto, in the area of the permitted work within 2 years after the acknowledged completion of the permitted work and there is no similar failure of the highway beyond the area of the permitted work, *the permittee has absolute responsibility to make temporary and permanent restoration of this area unless the permittee delivers clear and convincing evidence to the district office demonstrating that the highway failure was caused by another person.*

(ii) In situations where the permittee has the responsibility to restore the highway, including slope or another appurtenance thereto, under subparagraph (i), *the permittee has the duty to restore the improved area in accordance with the permit. If the permittee fails to restore the improved area properly, the Department will have the authority to do the work at the expense of the permittee.* The permittee shall reimburse the Department for the costs within 30 days after receipt of the Department's invoice. (Emphasis added.)

Because the utility's continued occupancy of the highway right-of-way is conditioned on the utility's compliance with the terms and conditions set forth in PennDot's regulations, PennDot is not making a claim that the Authority negligently damaged its property, but rather that it failed to fulfill its obligation to repair all damages caused by the break in its water line. If it did not and PennDot had to repair the damage that the Authority was obligated to perform, then the Authority was required to reimburse PennDot for any expenses it incurred in doing so. Moreover, because the claim is not tort based but "contract" based, the Tort Claims Act is inapplicable.

Accordingly, PennDot's motion for summary judgment is granted and the Authority's motion for summary judgment is denied. The Authority is required to repay PennDot $22,122.78 in damages that PennDot incurred to repair the damage to SR 51 caused by the July 1998 leak in the Authority's water line.

### ORDER

AND NOW, this *13th* day of *March*, 2007, the motion for summary judgment by the Commonwealth of Pennsylvania,

---

lations, and subject to the payment of such fees for permits for the placing of such structures and openings, as may be prescribed and required by the department." Section 420 allows PennDot to issue permits for the occupancy of state highways and for the opening of the surface of state highways on terms and conditions established in department regulations.

Department of Transportation, is granted. The motion for summary judgment filed in our original jurisdiction by the Municipal Authority of The Borough of West View is denied.